Nenita A. **DAVIS**, Appellant,

v.

Marshall E. **DAVIS**, Respondent.

**No. WD 42606.**

Missouri Court of Appeals,
Western District.

Sept. 18, 1990.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Oct. 30, 1990.

Application to Transfer Denied
Dec. 18, 1990.

William A. Shull, Legal Aid, Warrensburg, for appellant.

Leonard K. Breon, Warrensburg, for respondent.

Before NUGENT, C.J., and FENNER, J., and WASSERSTROM, Senior Judge.

NUGENT, Chief Judge.

Nenita A. Davis appeals the circuit court order dismissing her petition for custody of her minor child, Vanessa L. Davis, for want of subject matter jurisdiction and recognizing the subject matter jurisdiction of an Alabama court to enter a custody decree. We affirm the judgment of the circuit court.

Ms. Davis first contends that the court erred in failing to consider evidence outside the record from the Alabama circuit court to determine whether or not jurisdictional facts existed to support that court's custody orders. She next argues that the court erred in recognizing the Alabama court's orders in that no factual or legal basis supported that court's exercise of jurisdiction. Third, Ms. Davis maintains that the circuit court erred in recognizing the Alabama court's orders because of insufficient pleadings and because it did not first make proper jurisdictional findings of fact supporting the orders. Fourth, she asserts that the circuit court erred in recognizing the Alabama court's orders because that court improperly modified one order. Fifth, Ms. Davis argues that the circuit court erred in ruling that "Missouri was not the 'home state' of Vanessa Davis...." Sixth, she maintains that the circuit court erred in ruling that the Alabama judge properly considered jurisdictional facts existing at the time of the first order's entry.

The Davis' saga began when they met in April, 1983, at Whiteman Air Force Base in Knob Noster, Missouri, where Mr. Davis served in the Air Force. They dated, but kept separate residences until March, 1984, when they began living together. In October of that year, Ms. Davis gave birth to Vanessa. In May, 1985, the Air Force assigned Mr. Davis to a base in Japan where he lived for the next three years. He returned on leave to Knob Noster in the summer of 1986, married Ms. Davis on July 5. He returned again on leave the next summer. During both those summers, Vanessa spent two weeks with her father while he visited his family in rural Alabama. On May 3, 1988, Mr. Davis returned to Knob Noster on his way to a new assignment at Maxwell Air Force Base near Montgomery, Alabama. He arranged to move the family's belongings to his parents' house in Autauga County, Alabama, and on May 20, the family left Missouri and arrived at his parents' house the next day. On June 1, the Davises moved to temporary housing in Elmore County, Alabama, near the base.

Ms. Davis testified that after her husband's return from Japan she realized that their marriage would soon collapse because her husband wanted nothing to do with Stephanie, her daughter from a previous marriage. She further testified that she had opposed the move to Alabama, believing that she needed to remain in Missouri to litigate an upcoming child custody action involving Stephanie. On June 2, she returned to Missouri to litigate that action, taking Vanessa with her. They travelled back to Alabama on July 2, 1988, and, according to her, after her return she and her husband argued frequently. She decided to leave him, and on July 26 she and Vanessa left Alabama. Ms. Davis testified that she informed her husband of her plan to return to Missouri and told him that he could reach her through her sister, who lived on an air base in Alaska. In addition, she testified that her husband and a sister-in-law watched her pack the night before she departed. According to Mr. Davis, however, he did not know that his wife intended to leave him and to take their daughter with her. He testified that he realized that they had gone only when he

returned from work on the afternoon of July 26 and noticed their absence along with his car, several appliances, and much of his wife's clothing. He also testified that two days after her disappearance, his wife telephoned, explaining that she wanted to end their marriage and that she intended to move in with her sister at the Alaskan air base.

Now begins our descent into the many levels of a procedural inferno. On August 30, in the circuit court of Autauga County, Alabama, Mr. Davis filed for divorce and for custody of Vanessa. The next day he moved from Elmore county to his parents' house.[1] He attempted service of his complaint on his wife at the Alaska air base, but on September 16, the Alabama court received notice that the complaint remained undelivered. He later learned that his wife and daughter lived not in Alaska, but back in Knob Noster, Missouri. On September 26, Mr. Davis obtained service on his wife in Knob Noster, but when she failed to answer his complaint within the thirty days required under Alabama law, the Alabama court on November 5 entered a default judgment against her.

On January 5, 1989, that court held a final hearing on Mr. Davis' petition. He appeared with counsel; neither Ms. Davis nor her counsel appeared. Recounting four reports of his wife's child neglect, one involving a house fire, made to Missouri's Division of Family Services (hereinafter D.F.S.), and reported by that agency to him while he served in Japan, Mr. Davis testified that he believed living with his wife imperiled his daughter. He testified that his wife had told him that she had left their daughter alone in the house. He further testified that he could financially support the child and that his mother remained at home all day and could care for Vanessa while he worked. On January 9, the court granted his petition.

On February 16, he then petitioned the circuit court of Johnson County, Missouri, to enforce a custody decree of another state by warrant in lieu of writ of habeas corpus, and that same day the circuit court ordered the sheriff to deliver Vanessa to her father. About seven-thirty that evening, the sheriff, accompanied by Mr. Davis, met Ms. Davis at her house and asked to see Vanessa. She answered that a friend who babysat the girl had taken her to Kansas City and that they would not return for two or three days. According to the sheriff, Ms. Davis knew only the babysitter's first name and did not know the address. He also testified that at one point Ms. Davis told her husband, "You're not getting my child. I'm not going to give you my child," and then repeated the admonition at least one other time. The sheriff arrested her for disobeying a court order, and a deputy took her to police headquarters in Warrensburg.

Ms. Davis' lover, with whom she lived and whose child she then carried, volunteered to take the sheriff and Mr. Davis to Vanessa. The three men went to a house on Whiteman Air Force Base, where they found the girl. The sheriff then released Ms. Davis, and Mr. Davis and Vanessa left for Alabama.

On March 14, Ms. Davis moved to quash the February 16 warrant and to regain custody of her daughter. She also filed an answer to her husband's motion for a custody writ in which she challenged the Alabama court's subject matter jurisdiction over custody rights to her daughter. In addition, she petitioned the circuit court for custody of Vanessa and for distribution of marital and separate property. On March 15, the circuit court entered an order that found its February 16 warrant defective, because the warrant erroneously ordered delivery of Vanessa to her father, rather than to the court, and because it failed to specify a date by which Ms. Davis had to file her answer to Mr. Davis' petition. The court set a hearing on the matter for March 31.

On March 16, the Alabama court entered an amended final divorce decree, giving custody of Vanessa to Mr. Davis. Employing Rule 60(a) of the Alabama Rules of

---

1. The record includes testimony by Mr. Davis that his permanent address since his entry into the Air Force in 1980 remained that of his parents' in Autauga County.

Civil Procedure, the court amended its January 9 decree to address Ms. Davis' challenge to its subject matter jurisdiction.

On March 31, the hearing in the Missouri court convened with both parties present. The circuit court entered an order, dated July 28 and filed October 12, recognizing the subject matter jurisdiction of the Alabama court. It found that the information proffered and testimony given by Ms. Davis lacked credibility and failed to rebut the presumption that the Alabama court had jurisdiction over the child's custody. It further found that, although Mr. Davis' habeas corpus action failed on procedural grounds, his pleading seeking enforcement of the Alabama custody order remained valid. The court concluded that the petitioner had provided the Alabama circuit judge with information sufficient to afford that court subject matter jurisdiction to determine Vanessa's custody. Accordingly, the circuit court recognized the Alabama court's determination of Vanessa's custody.

Ms. Davis has appealed that judgment.

In reviewing a dissolution decree and custody order, we apply the same standard we apply in all civil cases tried to the court. An appellate court must affirm the trial court's judgment unless it erroneously declares or applies the law or no substantial evidence supports it or the weight of the evidence compels another result. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976) (en banc).[2] The court in *Murphy* admonished appellate courts to exercise with caution their power to set aside a judgment on the ground that the weight of the evidence seems to require a different result, urging reversal only when we firmly believe that the trial court has erred. *Id.*

In addition, as in all civil cases, we view the evidence in the light most favorable to the party prevailing at trial, Mr. Davis, and draw from that evidence only inferences favorable to his case. *Welch v. Hyatt*, 578 S.W.2d 905, 912 (Mo.1979) (en banc). Further, we disregard, unless it proves favorable to Mr. Davis' case, all evidence that Ms. Davis has introduced. *Id.*

In her first point on appeal, Ms. Davis contends that the circuit court erred in failing to consider evidence outside the Alabama record to determine whether or not jurisdictional facts existed to support the Alabama custody orders of January 9 and March 16, 1989. She argues that Missouri courts, when asked to enforce the judgment of a court in another state, may review evidence outside the record of the foreign proceeding to determine whether that state's court had the jurisdiction to enter judgment.

■■■ "Subject matter jurisdiction concerns 'the nature of the cause of action or the relief sought,' and exists only when the tribunal 'has the right to proceed to determine the controversy or question in issue between the parties, or grant the relief prayed.'" *State Tax Comm'n v. Admin. Hearing Comm'n*, 641 S.W.2d 69, 72 (Mo. 1982), *citing Cantrell v. City of Caruthersville*, 359 Mo. 282, 290, 221 S.W.2d 471, 476 (1949). A party's appearance or answer does not confer subject matter jurisdiction, nor may a party waive the defense of lack of subject matter jurisdiction. Moreover, a party may raise the issue of lack of subject matter jurisdiction at any stage of a proceeding. *Id.*

■ If in challenging the jurisdiction of another state's court, a party litigating in a Missouri court raises issues of fact sufficient to defeat a motion for summary judgment, then "both parties must be given the opportunity to present evidence concerning the jurisdiction" of the other state's court. *Kilgore v. Kilgore*, 666 S.W.2d 923, 932 (Mo.App.1984). In fact, that occurred at the March 31 hearing in the Johnson County circuit court, and both parties testified at length.

Ms. Davis argues, however, that the court failed to consider the evidence introduced. She cites as examples paragraphs three, four and five in the court's order dated July 28 and filed October 12, 1989,

---

**2.** Because the Missouri Supreme Court has heard en banc all cases since October 28, 1982, we do not include "en banc" in our citations to that court's decisions after that date.

recognizing the subject matter jurisdiction of the Alabama court. In paragraph three, the court merely quoted from the Alabama court's citation of CODE OF ALABAMA, § 30-3-23(a)(4), which states:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(4)a. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (1), (2), or (3) ... and

b. It is in the best interest of the child that a court in this state assume jurisdiction.

In paragraph four, the court concluded that the Alabama court reached the only conclusion possible, based upon the January 9 "vantage point" that afforded only the knowledge that Vanessa and both her parents lived for about six weeks in Alabama before Ms. Davis took their daughter and "deserted" her husband; that Mr. Davis believed his wife had absconded with their daughter to Alaska; and that between receiving service of process in her husband's action on September 26, 1988, and the January 5, 1989, Alabama divorce and custody hearing, Ms. Davis initiated no action in Missouri. In paragraph five, the court concludes that Mr. Davis had given the Alabama judge information sufficient to enable him to find that the Code of Alabama, § 30-3-23(a)(4), afforded his court jurisdiction to determine who should receive custody of Vanessa. Ms. Davis has not demonstrated that evidence outside the record would have convinced the circuit court that the Alabama court did not have jurisdiction to render its dissolution and custody decrees.

■ "'The general rule is that a court's acquisition of jurisdiction over a case depends on the facts existing at the time its jurisdiction is invoked.'" *State ex rel. Laws v. Higgins*, 734 S.W.2d 274, 278 (Mo. App.1987). When it issued its initial decree on January 9, and when it amended that decree on March 16, the Alabama court had before it the following jurisdictional facts,

which, under *Welch v. Hyatt, supra,* 578 S.W.2d at 912, we must accept as true: (1) Mr. Davis has consistently maintained as his permanent address his parents' home in Autauga County, Alabama; (2) Ms. Davis, her husband and her daughter moved from Missouri to Alabama on May 20, 1988, intending to make Alabama their new home. (3) On July 26, Ms. Davis took Vanessa to Missouri without telling her husband of her plans and, (4) several days later, telephoned her husband to tell him that she intended to move with Vanessa to Alaska. (5) Mr. Davis filed his dissolution and custody action in Alabama on August 30 and (6) served notice of the action on his wife at a Missouri address on September 26. (7) Ms. Davis failed to respond to the action within the thirty days required under Alabama law, (8) responding and filing her own action in Missouri only on March 14, 1989. (9) At a hearing in Alabama on January 5, 1989, Mr. Davis introduced evidence that Missouri's D.F.S. had received reports of neglect regarding Ms. Davis and her treatment of Vanessa and Stephanie.

Although evidence of those facts alone provided the Alabama court with proof allowing little alternative but to enter a default judgment and grant Mr. Davis' petition, the Johnson County circuit court nevertheless found that the January 9 Alabama decree contained too little evidence either to prove that the Alabama court indeed had jurisdiction over the matter or that it could properly amend that decree through the March 16 Rule 60(a) motion and amended order.

The circuit court did, however, agree with the result reached by the Alabama court in awarding custody of Vanessa to her father. It further concluded that Mr. Davis had provided the Alabama court with evidence that allowed the Alabama court to conclude that it "appeared" that Alabama had jurisdiction over the matter. The court also concluded that it had no power to look behind the record of the Alabama court to assess the validity of its assertion of jurisdiction.

■ Based upon the facts existing at the time Mr. Davis filed his petition, the Ala-

bama court did have subject matter jurisdiction.

The Alabama record and evidence outside that record entered the record of the March 31, 1989, hearing in Johnson County, and some of that evidence proved damning to Ms. Davis. For example, the court heard testimony that Ms. Davis refused to turn over her daughter to Mr. Davis in violation of a court order.

Further, the court found that Ms. Davis' testimony did not prove credible, whereas Mr. Davis' did. Evidence outside the Alabama record contains nothing to convince us that the circuit court erred in agreeing with the Alabama court's decision to grant custody of Vanessa to her father because, after comparing the testimony of both parents, the circuit court also determined that Mr. Davis would provide the best environment for the little girl. If a trial court reachs the correct result, the reason it assigns for reaching that result, correct or not, makes no difference. *Dobyns v. Dobyns*, 650 S.W.2d 701, 705 (Mo.App.1983). The record as a whole amply demonstrates that both the Alabama court and the circuit court in Johnson County reached the correct results.

In her second point on appeal, Ms. Davis contends that the circuit court erred in recognizing the January 9 and March 16 custody orders of the Alabama court. She argues that the facts existing at the time the Alabama court entered those orders failed under either Missouri or Alabama law to create a factual basis upon which the court could legitimately exercise its subject matter jurisdiction.

Having already set out the jurisdictional facts extant at the time of those orders and Missouri's requirements for facts supporting a court's jurisdiction, *see State ex rel. Laws v. Higgins, supra,* 734 S.W.2d at 278, we turn to the applicable statutory jurisdictional requirements in child custody cases in Missouri and Alabama. Missouri courts acquire jurisdiction over a custody hearing if Missouri serves as the child's "home

state" at the time the proceeding commences. § 452.450.1(1)(a) [3]. "Home state" means the state in which, immediately preceding the filing of a custody proceeding, the child and at least one parent have lived for six months. § 452.445(4). Temporary absences from the state count as parts of the six month residency requirement. *Id.*

Further, a Missouri court acquires jurisdiction if such jurisdiction best serves the interest of the child because the child and at least one parent have substantial connection with this state and because substantial evidence in this state attests to the child's present or future care, protection, training and personal relationships. § 452.450.1(2). Finally, a Missouri court acquires jurisdiction if no other state appears to have jurisdiction under requirements similar to those outlined in the first three subdivisions of this section or if another state has declined to exercise jurisdiction. § 452.450.1(4).

A Missouri court may decline to exercise jurisdiction, however, if the petitioner for the initial decree has wrongfully taken the child from another state or has engaged in other reprehensible conduct. § 452.475.1. Moreover, a Missouri court may not exercise jurisdiction over a custody action if, at the time of the filing of the pleadings, another custody action involving the same child already has begun in another state that has assumed jurisdiction substantially in conformity with §§ 452.440 to 452.550.

Alabama's definition of "home state" substantially matches Missouri's. CODE OF ALABAMA, § 30–3–22(5). Moreover, Alabama's code, § 30–3–23, grants its courts jurisdiction over a child custody action if Alabama serves as the child's home state at the time an action begins, if Alabama jurisdiction best serves the child's interest for the reasons set forth in Missouri's § 452.450.1(2), or, as in Missouri's § 452.450.1(4), if no other state has jurisdiction.

■ *Kilgore, supra,* 666 S.W.2d at 932, reiterates the settled case law that "a judg-

---

**3.** Unless otherwise indicated, all sectional citations refer to the Revised Statutes of Missouri, 1986.

ment entered by a foreign court is presumed to be a judgment in a matter in which the court had jurisdiction over the parties and the subject matter...." The person contesting recognition of that judgment bears the burden of rebutting that presumption through sufficient evidence. *Id.* If the person challenging recognition fails to rebut that presumption, then Missouri must give full faith and credit to the judgment of another state's court. *Martin v. Adams,* 718 S.W.2d 168, 169 (Mo.App. 1986). *See also* § 511.760.

The record demonstrates that Vanessa and both her parents moved from Missouri to establish a new home in Alabama, the state in which Mr. Davis maintained his legal residence. Alabama could not serve as Vanessa's "home state" under § 452.450.1(1), however, because at the time her father filed his dissolution and custody action on August 30, 1988, even counting as a temporary absence the time she spent with her mother hidden in Missouri, the little girl had spent far less than the requisite six months in Alabama.

Nor does the record demonstrate a significant connection between Vanessa and Alabama to prove that Alabama jurisdiction serves the child's best interest under § 452.450.1(2). Instead, Vanessa had far more significant contacts with Missouri. Although her best interests certainly lie with her father, this subsection refers not to the choice of a parent, but to the choice of a forum, and that choice of forum rests upon a maximum of contacts with the forum state. *State ex rel. Laws, supra,* 734 S.W.2d at 278.

■ Missouri may have acquired jurisdiction under § 452.450.1(2), but we need not address that issue, since we deal only with the question of Alabama jurisdiction. Assuming arguendo that Missouri had jurisdiction, however, it did not have exclusive jurisdiction. More than one state may have jurisdiction over a custody case. *Id.* at 277; *Kilgore, supra,* 666 S.W.2d at 932–33.

■ Alabama acquired jurisdiction over this action under CODE OF ALABAMA, § 30-3-23, and Missouri's § 452.450.1(4), both of which allow a state to exercise

jurisdiction if in the circumstances no other state appears able to exercise jurisdiction. At the time Mr. Davis invoked the jurisdiction of the Alabama court, August 30, 1988, he believed that his wife had fled with their child to Alaska, which certainly had no jurisdiction over Vanessa's custody. He could not reasonably invoke Missouri jurisdiction with his wife and child hidden in Alaska. The Alabama court, faced with those facts, drew the only conclusion possible under the circumstances: that Alabama, the petitioner's home, could properly assume jurisdiction over the custody suit because no other state had jurisdiction. Had the Alabama court known the actual situation at the time Mr. Davis filed his action, it might not have exercised jurisdiction, but, as we have noted, "a court's acquisition of jurisdiction over a case depends on the facts existing at the time its jurisdiction is invoked," and not upon facts discovered afterwards. *State ex rel. Laws, supra,* 734 S.W.2d at 278.

In addition, once Alabama exercised jurisdiction, Missouri could not have exercised jurisdiction simultaneously. § 452.465.1. In fact, Ms. Davis attempted to invoke Missouri's jurisdiction only long after the Alabama court had entered a default judgment against her.

Although in its March 31, 1989, judgment the circuit court declined to abdicate jurisdiction under § 452.475.1, nothing prevented the Alabama court from believing on August 30, 1988, that even if Ms. Davis had invoked jurisdiction before that date a Missouri court could have refused to exercise jurisdiction under that statute, since the respondent had acted reprehensibly by absconding with Vanessa from Alabama and then lying to her husband about their whereabouts. Indeed, in *Dobyns v. Dobyns, supra,* Judge Wasserstrom held that a parent who deliberately hid a child acted in a way that could trigger § 452.475.1. 650 S.W.2d at 707.

Thus, the circuit court did not err in concluding that the petitioner supplied the Alabama court with information sufficient to allow the Alabama court to exercise jurisdiction. Further, as we have noted,

the circuit court did not err in concluding that the Alabama court had reached the correct result in awarding custody of Vanessa to the more responsible parent. *Id.* at 704–05.

In her third point on appeal, Ms. Davis contends that no proper pleadings or proper findings of fact supported the Alabama court's two orders. She argues that based upon the information included in the findings of fact in those orders, the Alabama court could not legitimately conclude that it had jurisdiction. Further, she questions where that court obtained its information, stating that the January 5, 1989, hearing produced no information upon which the court could base its jurisdiction.

Under *Kilgore, supra*, we need not look behind the Alabama court's presumed jurisdiction, unless Ms. Davis produces evidence that rebuts that presumption. Having concluded that jurisdiction exists, we must presume that the Alabama court had before it proper pleadings. Moreover, the Rule 60(a) motion referred to D.F.S. documents that the court had before it.

The Alabama court's January 9 order did lack findings of fact upon which that court could base its jurisdiction. In its Rule 60(a) motion and amended order of March 16, however, the Alabama court included extensive findings of fact and conclusions of law that supplemented those in its initial order. Although the circuit court questioned the sufficiency, for jurisdictional purposes, of the facts included in the Alabama court's orders, it nevertheless made similar findings and reached the same conclusion as did that court. Further, we believe that more than coincidence underlies the Alabama court's findings of fact including information mirroring Mr. Davis' testimony at the Johnson County hearing held two weeks after the Alabama court issued the Rule 60(a) amended order.

The courts in Missouri and Alabama made similar findings of fact and conclusions of law. As we have already held, they each achieved the correct result. Therefore, we need not inquire into the pleadings and other information sources that the Alabama court used in reaching

conclusions that at the time the petitioner invoked its jurisdiction provided reasonably convincing proof of Alabama jurisdiction.

In her fourth point on appeal, Ms. Davis maintains that the circuit court erred in recognizing the Alabama court's March 16 custody order, because the Alabama court improperly modified its January 9 order using Rule 60(a). She argues that the Alabama court's sua sponte modifications exceeded those permitted by that rule.

Rule 60(a) of Alabama's civil procedure rules reads, in pertinent part:

(a) **Clerical mistakes.** Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of any appeal or thereafter, such mistakes may be so corrected by the trial court.

Rule 60(b) provides a more complicated route for amending "[m]istakes; inadvertance; excusable neglect; newly discovered evidence; fraud, etc."

Alabama courts limit the scope of modifications under Rule 60(a) to errors "associated with mistakes in transcription, alteration, or omission of papers and documents, a mistake mechanical in nature which does not involve the legal decision or judgment." *Wilson v. Leck's 66 Serv. Station*, 513 So.2d 620, 621 (Ala.Civ.App.1987). Trial courts may not employ the rule to reach a different judgment through alteration or amendment. Errors more substantial than clerical errors require modification not under Rule 60(a), but under Rule 60(b) or another rule. *Id.*

In *Michael v. Michael*, 454 So.2d 1035, 1037 (Ala.Civ.App.1984), Alabama's court of civil appeals held that the object of Rule 60(a) "is to make the judgment or record speak the truth." A trial court may not employ the rule to modify or enlarge the judgment, said the court, nor "make the judgment say something other than what was originally pronounced." The court deemed mistakes involving the exercise of

judicial discretion beyond the scope of the rule. *Id.*

The Alabama court's Rule 60(a) motion of March 16, 1989, did not alter or change its January 9 judgment. Nor did it enlarge the rights of custody given Mr. Davis by the initial order. Instead, the court added facts pertaining to jurisdiction. Stating that those facts existed at the time of the January 9 order, the court explained in its order that the initial order did not address questions of jurisdiction because Ms. Davis had not contested jurisdiction, having failed to respond to the action.

Thus, the Alabama court supplemented its initial order to allow it to "speak the truth" asserted therein; the court did not alter its judgment in any way. Facts supplementing a judgment to answer questions arising after its entry differ from legal conclusions altering the judgment.

Ms. Davis remains free, of course, to pursue this question to discover whether an Alabama court will reach the same conclusion. Here, however, she has not rebutted the presumption, accepted by the circuit court, that the Alabama court's Rule 60(a) motion supplemented its initial order, within the scope intended by that rule, to clarify its exercise of subject matter jurisdiction.

In her fifth point on appeal, Ms. Davis contends that the circuit court erred in ruling that Missouri did not serve as Vanessa's home state because immediately preceding the filing of the divorce proceeding she had not lived in Missouri for six months. She argues that the time that both she and her daughter lived with Mr. Davis in Alabama counted merely as temporary absences from Missouri and, therefore, under § 452.445(4) they had both lived in Missouri for far longer than six months before August 30, 1988.

■ Under *Dobyns, supra,* 650 S.W.2d 701, a home state's jurisdiction remains intact for·six months after a child's departure from that state if one parent continues to live in that home state. *Id.* at 706, *citing* § 452.450.1(1)(b). In *Dobyns,* however, one parent fled the home state taking the child, while the other parent remained there.

Here, on the other hand, both parents left the home state with their child, intending to make a new home in Alabama. Thus, Ms. Davis's visit with Vanessa to Missouri to litigate Stephanie's custody and their surruptitious return in July, 1988, became temporary departures from Alabama, for Missouri's status as the Davis' home state ended with their May 20, 1988, move to Alabama. She testified that although she found a job while in Missouri litigating the child custody action involving Stephanie, she did so merely to support Vanessa and herself during their temporary stay, since she had taken very little money with her upon leaving Alabama in late June, 1988.

Assuming arguendo that Ms. Davis intended that Missouri should again become the home state for her and her daughter when she fled there on July 26, 1988, we may only begin counting their time in Missouri from that date. Thus, both Vanessa and her mother had spent about thirty-five days in Missouri when Mr. Davis filed his petition for divorce and custody, far less time than the requisite six months.

In addition, based upon the facts available on August 30, 1988, both Mr. Davis and the court believed that Ms. Davis had fled with Vanessa to Alaska. Therefore, the Alabama court reasonably could conclude that Missouri did not serve as Vanessa's home state at that time, and neither the circuit court nor this court may second guess that conclusion.

In her sixth and final point on appeal, Ms. Davis maintains that the circuit court erred in concluding that the Alabama court ruled correctly based upon the facts available to it on January 9, 1989, the date of its initial custody and divorce degree. She argues that under the laws of Alabama and Missouri, home state jurisdiction depends upon the facts existing at the time the custody proceeding begins and, therefore, that the circuit court should have denominated those jurisdictional facts existing on August 30, 1988, as the applicable facts.

Ms. Davis correctly points out the circuit court's error. *State ex rel. Laws v. Higgins, supra,* 734 S.W.2d at 278, but she has failed to demonstrate any prejudice to her from that error. To prove reversible error, she had to show that the error "materially affected the merits of the case." Rule 84.13(b) [4]; *Goff v. St. Luke's Hospital,* 753 S.W.2d 557, 566 (Mo.1988).

Not only has Ms. Davis failed to show that the error prejudiced her in any way, but she advocates a position detrimental to her interests. The jurisdictional facts existing on August 30, 1988, weighed more heavily against Missouri's role as Vanessa's home state than did those existing at the time of the January 9, 1989, order. On August 30, 1988, as we have noted, both Mr. Davis and the Alabama court believed that Ms. Davis and Vanessa had gone to Alaska to live; thus, Missouri played less of a role than it did a little over four months later when the court and Mr. Davis knew that the respondent and the little girl had actually gone directly from Alabama to Missouri on July 26, 1988, and had never travelled to Alaska. We have already addressed the "home state" issue and need not do so again.

Under the standard established in *Murphy v. Carron, supra,* 536 S.W.2d 30, the record shows that the circuit court neither committed legal errors prejudicing Ms. Davis nor arrived at an incorrect conclusion. For the foregoing reasons, we affirm the judgment of the trial court.

All concur.

**4.** Missouri Rules of Court, 1990.