Sharon Louise GROH, Respondent,

v.

Donald Albert GROH, Appellant.

Nos. WD 50106, WD 50711.

Missouri Court of Appeals,
Western District.

Oct. 24, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 5, 1995.

Ronald R. Holliday, Thomas, Burns & Holliday, St. Joseph, for appellant.

Craig D. Ritchie, Watkins, Boulware, Lucas, Miner, Murphy and Taylor, St. Joseph, for respondent.

Before BERREY, P.J., and ULRICH and ELLIS, JJ.

ELLIS, Judge.

Donald Albert Groh appeals the Decree of Dissolution of his marriage to Sharon Louise Groh entered by the Buchanan County Circuit Court on September 1, 1994.

Donald raises seven points on appeal. However, we need not address most of those points because we find the trial court lacked subject matter jurisdiction, as asserted in Donald's first point. He contends that neither party had been a resident of Missouri for ninety days next preceding the commencement of the dissolution proceeding as required under § 452.305, RSMo 1994.[1] We reluctantly agree, despite a strong feeling that the parties have misused the judicial processes of the State of Missouri.

Because of our disposition, a detailed recitation of the facts is unwarranted. However, a brief summary of the relevant information is essential. Donald and Sharon were married on August 26, 1962. Prior to their separation on March 16, 1993, the Grohs were lifetime residents of Wathena, Kansas. Donald is president and chief executive officer of Groh Orchards, Inc., an apple orchard in Wathena, Kansas. Groh Orchards is a fifth generation, family owned and operated business which has been passed down from generation to generation by Donald's family. The primary business of Groh Orchards is the growing, packing and selling of apples. Donald has been involved with the orchard for over thirty years and still works there. The Grohs' marital residence is located on the orchard grounds.

After the parties separated on March 16, 1993, Sharon continued to live in the marital home in Wathena, Kansas,[2] and Donald moved into an apartment in St. Joseph, Missouri. On April 2, 1993, seventeen days after the separation, Sharon filed a Petition for Dissolution of Marriage in Buchanan County, Missouri. In that petition, Sharon stated, "Petitioner has been a resident of Wathena, Doniphan County, Kansas for at least ninety (90) days immediately preceding the filing of this Petition. Respondent presently resides in St. Joseph, Missouri." She did not allege that either of them had been a resident of Missouri for the ninety days preceding the filing of the petition.

---

1. Section 452.305.1 provides:
 The circuit court shall enter a decree of dissolution of marriage if
 (1) The court finds that one of the parties has been a resident of the state ... for ninety days next preceding the commencement of the proceeding and that thirty days have elapsed since the filing of the petition.

2. Although Sharon remained in the marital home at the time of the separation, Donald was given the marital home in the parties' pretrial separation agreement, presumably because it was located on the Groh Orchard property.

On April 24, 1993, Donald filed a motion to dismiss asserting lack of subject matter jurisdiction. In that motion, Donald stated he had resided in St. Joseph, Missouri only since the parties' separation on March 16, 1993, and that neither party was a resident of Missouri. On April 30, 1993, Sharon filed a First Amended Petition for Dissolution of Marriage, in which she specifically alleged Donald had been a resident of St. Joseph, Missouri for at least ninety days preceding the filing of the petition. On May 12, 1993, Donald filed an Answer to First Amended Petition for Dissolution of Marriage, in which he admitted he had been a resident of Missouri for the requisite time.

At trial, Donald's counsel stipulated to the jurisdiction of the Buchanan County Circuit Court, and after Sharon's attorney questioned Donald about the possible jurisdictional problem, he responded that he was not contesting the jurisdiction of the court to hear the evidence. After hearing the evidence and receiving proposed decrees from the parties, the trial court issued a Decree of Dissolution of Marriage in which it ordered the dissolution and divided the parties' property. In the decree, the trial court specifically found Donald was a resident of Missouri for ninety days next preceding the commencement of the proceeding. He now asserts it was error for the trial court to make that finding.

■■■ In a dissolution action, the issue of residency in Missouri is a jurisdictional fact which must be pleaded and proved. *Berry v. Berry,* 620 S.W.2d 456, 457 (Mo.App.1981). Subject matter jurisdiction cannot be waived by the parties, *Davis v. Davis,* 799 S.W.2d 127, 130 (Mo.App.1990), nor does the parties' stipulation as to jurisdiction confer jurisdiction on the trial court. *Berry,* 620 S.W.2d at 458.

> While allegations in a petition, admitted in an answer, are judicial admissions, a party's appearance or answer does not confer subject matter jurisdiction, nor may a party waive the defense of lack of subject matter jurisdiction.

*Wambugu v. Wambugu,* 896 S.W.2d 756, 757 (Mo.App.1995) (quoting *Davis,* 799 S.W.2d at 130). Furthermore, a party may raise the issue of lack of subject matter jurisdiction at any time, and it may be raised for the first time on appeal. *Davis,* 799 S.W.2d at 130. Consequently, Donald's admission and stipulation to the trial court's jurisdiction did not confer jurisdiction on the court, nor does it affect his ability to raise the issue on appeal.

■■■ Our standard of review on appeal from a decree of dissolution of marriage is the same as in other court tried cases. We will affirm the trial court unless it erroneously declares or applies the law, unless no substantial evidence supports the judgment, or unless the weight of the evidence compels another result. *Davis,* 799 S.W.2d at 127 (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). In addition, we view the evidence in the light most favorable to the party prevailing at trial and draw only those inferences favorable to that party. *Id.* at 130. When a trial court exercises jurisdiction, an appellate court must accept as true any facts which would support the conferring of jurisdiction. *Id.* at 131. In the case at bar, the trial court specifically found that Donald had been a resident of St. Joseph, Missouri for the ninety days next preceding the commencement of the action.

The entirety of the evidence in the record supporting a finding of Donald's residency came through direct examination of Sharon and Donald. During direct examination of Sharon by her attorney, the following exchange took place:

Q. Mrs. Groh, are you aware that your husband initially took the position that you could not file in Buchanan County since you do not reside in Missouri?

A. Right.

Q. Okay. And filed some sort of pleading to that effect?

A. Yes.

Q. Can you tell the Court why you believe, in fact, your husband did reside here prior to you filing your petition?

A. For one thing, he registered his pickup truck in Missouri back in December of 1992.

MR. BIGGS [Donald's attorney]: Your Honor, we're not objecting to jurisdiction of the Court.

THE COURT: So, it's a relevancy objection?

MR. BIGGS: Yes, Your Honor.

THE COURT: Okay. Mr. Ritchie [Sharon's attorney], what's the relevancy?

MR. RITCHIE: It simply goes to attorney fees, Your Honor, and filing of pleadings on motion to dismiss.

THE COURT: All right. It's probably relevant on that issue. Overruled.

Then, on direct examination of Donald by Mr. Ritchie, the following exchange took place:

Q. Earlier Mrs. Groh, Sharon, testified about filing the petition alleging that you were a resident of the state of Missouri. Do you remember her testifying about that?

A. Yes.

Q. Initially, you and Ms. Day [3] contested jurisdiction of this court, suggesting that, in fact, you were not a resident of the state of Missouri?

A. We questioned it. I don't know if we contested it. We questioned it briefly.

Q. In fact, you had registered an automobile in the state of Missouri as a resident of the state of Missouri as early as December of 1992, isn't that correct?

A. No, I believe it was in January.

Q. January of 1992?

A. Three.

Q. Which was ninety days—at least ninety days before your wife filed for divorce?

MR. BIGGS: January of '93?

MR. RITCHIE: Yes.

A. I believe it was January of '93 is when I registered the vehicle at 1900 Lovers Lane, my house, which we owned then.

Q. (By Mr. Ritchie) Just to make sure the record is clear, you're not contesting the jurisdiction of this court to hear your divorce, are you?

A. No, I'm not.

No other evidence of Donald's residency was presented.

In *Goeman v. Goeman*, 833 S.W.2d 476 (Mo.App.1992), the court stated:

> Missouri cases generally hold that the term "residence" as used in § 452.305 is equivalent to "domicile." To establish residence in Missouri, a plaintiff must show "actual personal presence in the new place and the intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode."

*Id.* at 478 (quotation and emphasis omitted). In *Goeman*, we reversed the trial court and held that Mr. Goeman failed to prove residency, despite his assertion that he had been a resident of Missouri for ninety days preceding the filing of the petition. *Id.* at 479. In so holding, we pointed out that the record was silent as to many facts which might have shed more light on Mr. Goeman's intent to establish residency in Missouri, including an explanation of the nature of his intermittent presence in Missouri as well as facts such as whether he opened any bank accounts in Missouri, whether he registered a car or registered to vote in Missouri, whether Missouri income tax and Kansas City earnings tax were withheld from his income, and whether he filed a Missouri tax return. *Id.* at 479 n. 1. We found that "[g]iven the bareness of the record supporting the proposition that Mr. Goeman intended to make Missouri his domicile, the lack of specific testimony of intent, and the motive for forum shopping, this court holds that the trial court lacked subject matter jurisdiction over this action." *Id.; See also Klindt v. Klindt*, 888 S.W.2d 424 (Mo.App.1994) (holding that although husband had been out of Missouri to work in other states for nine months preceding the filing of the petition, the evidence, which included maintenance of his driver's license, vehicle registration and insurance in Missouri, registering in a local job service organization and applying for jobs in Missouri, established he had not relinquished Missouri residency.) [4]

---

**3.** Ms. Day was Donald's initial attorney who filed the initial response. She withdrew as Donald's counsel before trial.

**4.** In *Klindt v. Klindt*, 888 S.W.2d 424, 427 (Mo.App.1994), Mr. Klindt was a lifelong resident of Missouri. After being laid off from work, he and his family moved from Missouri to Minnesota for

■ As in *Goeman*, the record in the case at bar is silent as to any facts which might have shed some light on whether Donald was a resident of Missouri for the ninety days preceding April 2, 1993. There was no evidence of voter registration, driver's license registration, or taxes paid in Missouri. The *only evidence* regarding Donald's residency was the vague testimony to the registration of a truck in Missouri. There was no evidence as to who owned the truck, or where Donald lived at the time he registered the truck. He merely testified that he "registered the vehicle at 1900 Lovers Lane, my house, which we owned then." He did not state that he lived there. Moreover, the evidence was that he moved into an apartment at the time of the separation, and the record reveals that 1900 Lovers Lane was a rental house owned by the parties.

Furthermore, the parties agree they were separated on March 16, 1993. There was no evidence regarding where Donald lived prior to the separation. There was no evidence explaining why they did not consider themselves separated until March 16, 1993, if Donald was living in Missouri in January of 1993 (when he registered the truck). Donald claims that since they were not separated until March 16, 1993 (seventeen days before Sharon filed the petition), it is a physical impossibility for him to have resided in Missouri for the preceding ninety days. Sharon contends the separation date of March 16 is unimportant to the issue of when Donald became a resident of Missouri. She alleges there are different meanings to the term "separation" and she implies that although Donald was living in Missouri, the parties did not consider themselves "separated" until March 16 because that was the day they decided reconciliation was impossible. Thus, she argues, Donald could have been living in Missouri before March 16, even though that was the day they considered themselves "separated."

Sharon is engaging in unadulterated speculation. There is simply no evidence in the record to support her contentions. Moreover, even assuming, *arguendo*, that Donald was living in Missouri prior to the March 16 separation, until that separation (when the Grohs decided reconciliation was impossible) he could not have had the necessary intent to remain in Missouri. To establish residence in Missouri, Sharon must show *both* Donald's actual physical presence in Missouri *and* the intention to remain here. *Goeman*, 833 S.W.2d at 478. Sharon has shown neither. Thus, we conclude that the trial court lacked subject matter jurisdiction.

■ Sharon asserts that Donald should be barred from asserting lack of subject matter jurisdiction on the ground of laches or estoppel. She alleges that he knew of the jurisdictional defect and allowed the trial to go on, hoping to get a favorable judgment and then when he did not get the judgment he wanted, he asserted lack of subject matter jurisdiction. She cites *London v. London*, 826 S.W.2d 30 (Mo.App.1992), which applied laches to deny the wife's appeal seeking to vacate her dissolution decree on the ground of lack of subject matter jurisdiction. However, *London* is distinguishable from the case at bar. In *London*, the wife waited over six years from the date of dissolution to seek to vacate the decree. By that time, the husband had remarried, relying on the validity of the dissolution decree. The court pointed

three months while he had a job there. He and his family then lived with relatives in Missouri for two weeks before moving to Georgia for another job. They lived in Georgia for six months before Mr. Klindt filed a petition for dissolution in Missouri. At that time, Mr. Klindt moved back to Missouri. The trial court granted Mrs. Klindt's motion to dismiss the petition for lack of subject matter jurisdiction. We reversed and found that although Mr. Klindt had taken jobs in other states and resided in the state only intermittently during the previous nine months, he never intended to change his domicile from Missouri. The evidence showed he had maintained his vehicle registration and insured his vehicle in Missouri. He paid personal property tax and income tax in Missouri and maintained his driver's license in Missouri. While living in Georgia, he had also registered with a local job service organization in Missouri and applied for various jobs in Missouri. He also left some of his personal property in Missouri. We found that based on this evidence, despite testimony that he expressed an intention not to return to Missouri while in Georgia, Mr. Klindt had not relinquished Missouri residency because the evidence showed he did not intend to adopt Georgia as his domicile and the evidence failed to show he had adopted any location other than Missouri as his domicile.

out that the jurisdictional defect was apparent from the date of the decree and that Mrs. London, who was represented by counsel, should have raised the defect in a more timely fashion. The court also emphasized that both the husband and his new spouse, an innocent third party, had relied on its validity. Stating that "[i]t would be an injustice and a betrayal of public policy to allow the decree to be invalidated at this late date," the court applied laches to prevent the decree from being vacated on jurisdictional grounds.

The most obvious differences between *London* and the instant appeal are that in *London,* Mrs. London waited six years to raise the issue, and Mr. London and his new spouse, an innocent third party, had relied on the validity of the decree. In the case *sub judice,* Donald has first raised the issue in this appeal. He is entitled to do so. *Davis v. Davis,* 799 S.W.2d at 130. Moreover, Sharon is the one who brought this action in Missouri, and she was as familiar with the facts as to when he moved to Missouri as he was. In this case, there is no innocent third party, and neither of the parties can submit that they appear before us with clean hands on the issue of subject matter jurisdiction. Under such circumstances, we will not apply laches to avoid vacating the decree.

 As part of her contention that Donald should be estopped from asserting lack of subject matter jurisdiction, Sharon claims that pursuant to a partial settlement agreement, she transferred her interest in certain real property to Donald in exchange for a promise to pay $100,000. As required under the agreement, Donald has paid Sharon $40,000, but at the time of the trial, he had failed to make the additional monthly installments on the note. Sharon cites *Warren v. Warren,* 601 S.W.2d 683 (Mo.App.1980), to support her proposition that Donald should not be allowed to assert lack of jurisdiction because he has "enjoyed the fruits of the partial settlement agreement." Again, *Warren* is distinguishable from the case at bar. In *Warren,* the wife received a judgment for maintenance in gross. After judgment and while the appeal was pending, the wife required the husband to pay her in full on the maintenance judgment and attorney fees in

exchange for which she executed a quit claim deed releasing her interest in their residence which husband had been awarded in the decree. The court found that the wife had demanded satisfaction in exchange for her signature and she was paid. It said:

> The general rule is that one may not voluntarily accept the benefits of a judgment and afterwards prosecute an appeal to reverse it. The right to enjoy the fruits of a judgment and the right to attack it on appeal are inconsistent and an election to pursue one course is an abandonment of the other.

*Id.* at 687 (citations omitted). However, in so finding, the court found the wife had admitted the payment was to satisfy the alimony in gross so the judgment had been fully paid. The original contest, therefore, had been rendered moot. Thus, the wife was estopped from appealing the judgment. *Id.*

In contrast, the deal about which Sharon complains was pursuant to a partial settlement agreement. Although the trial court adopted the provisions of the settlement agreement as part of its decree, it was an agreement before the decree. In other words, the fact that the trial court lacked subject matter jurisdiction does not render the partial settlement agreement invalid. Furthermore, unlike the situation in *Warren,* the judgment of the trial court has not been satisfied.

We therefore find *London* and *Warren* to be distinguishable from the case at bar and refuse to apply laches or estoppel to bar Donald's appeal. Since we find the trial court lacked subject matter jurisdiction, we need not address Donald's remaining points, which involve the trial court's disposition of the parties' property. However, we will address Donald's appeal from the trial court's decision overruling his motion to quash an execution issued on the basis of the dissolution judgment. The appeal was consolidated with the appeal of the decree of dissolution.

 Following entry of judgment, which included a $25,000 award to Sharon for attorney fees, Sharon executed on Donald's IRA with the Twentieth Century Mutual Funds Corporation for recovery of the $25,000.

Donald filed a motion to quash the execution based on § 513.430(10)(f), alleging that the IRA was qualified to be exempt from execution under the Internal Revenue Code. Sharon argued that the exemptions under § 513.430 should not apply because the attorney fee award was in the nature of support and would therefore fall under § 452.140, which would make § 513.430 inapplicable. Following a hearing on the matter, the trial court overruled the motion to quash and entered an execution order on February 2, 1995. Donald appealed this order in a separate appeal.

A motion to quash execution is a collateral attack on the underlying judgment and has merit only when the record affirmatively discloses that the judgment was void for lack of jurisdiction of the parties or subject matter. *Division of Employment Sec. v. Cusumano,* 809 S.W.2d 113, 115 (Mo.App. 1991) (citation omitted). We have already found the trial court lacked subject matter jurisdiction in the dissolution proceeding and that the decree is void, so the award of attorney fees in that decree is also void. Because the judgment underlying the execution is void, the order of execution must be quashed. We need not decide whether the IRA was exempt from execution under § 513.430.

The trial court's decree of dissolution is vacated and the case is remanded to the trial court with instructions to dismiss the action for lack of subject matter jurisdiction and to quash the order of execution against Donald's IRA with Twentieth Century Mutual Funds Corporation.

All concur.