**BOOT HEEL NURSING CENTER, INC., d/b/a East Prairie Nursing and Rehabilitation Care Center, et al., Appellants,**

v.

**MISSOURI DEPARTMENT OF SOCIAL SERVICES, et al., Respondents.**

**No. WD 44636.**

Missouri Court of Appeals, Western District.

Jan. 7, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1992.

Application to Transfer Denied April 21, 1992.

Harvey M. Tettlebaum, Jefferson City, for appellants.

Richard Beaver, Jefferson City, for respondents.

Before KENNEDY, P.J., and FENNER and BRECKENRIDGE, JJ.

FENNER, Judge.

Appellants are three nursing homes located in southeast Missouri. They are Boot Heel Nursing Centers, Inc., d/b/a East Prairie Nursing and Rehabilitation Care Center (hereinafter East Prairie); Semo Nursing Centers, Inc., d/b/a Miner Nursing and Residential Care Center (hereinafter Miner); and Semo Nursing Centers, Inc., d/b/a Advance Nursing and Residential Care Center (hereinafter Advance).[1] Respondent is the Missouri Department of Social Services' integral Division of Medical Services (DMS). DMS has responsibility for administering the Missouri Medicaid Program.

Appellants appeal the dismissal by the trial court of their Petitions for Declaratory Judgment and Injunctive Relief. The trial court dismissed the petitions on the basis that the appellants failed to exhaust their administrative remedies.

Appellants alleged in their petitions that they are each certified to participate in the state's Medicaid Program. They alleged that under the regulation in effect at the time the facilities were licensed, 13 CSR

70–10.010(7)(B)1. (effective October 1, 1981) (hereinafter the Old Plan), newly constructed facilities were assigned a tentative prospective Medicaid reimbursement rate for their first twelve months of operation. At the end of the first twelve months, each facility was required, under the Old Plan to submit a cost report within a specified time to DMS itemizing the facility's total cost of operation for the first twelve months. 13 CSR 70–10.010(7)(B)2. Appellants alleged that they timely submitted cost reports for their first twelve months of operation as required under the Old Plan and that there was no reduction in their Medicaid reimbursement rates while the Old Plan remained in effect.

Appellants alleged that effective July 1, 1990, a new Long Term Care Reimbursement Plan was adopted at 13 CSR 70–10.010 (hereinafter the New Plan) and at the same time all provisions of the Old Plan were rescinded. The New Plan provides that appellants, and other nursing facilities similarly situated, would have a Medicaid reimbursement rate under the New Plan equal to the greater of their rate determined from their fiscal year end 1988 or their per diem rate in effect for services rendered on June 30, 1990, for services dated on and after July 1, 1990.

The Petitions state that in July of 1990, the appellants were advised of their Medicaid reimbursement rates under the New Plan. Appellants then register what is the essence of their complaint herein, which is that in August of 1990, they were notified by DMS that their future Medicaid reimbursement rates would be reduced in order to recoup overpayments made under the Old Plan. This reduction was pursuant to audits completed February 22, 1989.

In addition to their Petitions for Declaratory and Injunctive Relief, appellants have also filed complaints with the Administrative Hearing Commission (AHC) in which they seek hearings before the AHC to review the DMS decision. In their complaints with the AHC, appellants challenge the validity and reasonableness of their

---

1. Each of the appellants filed a separate petition with the trial court alleging the same essential facts and issues and requesting the same relief. The petitions have been consolidated on appeal.

reimbursement rates and further allege that the rates are not adequate to meet costs incurred, that their reimbursement rates do not take into account relevant economic trends and conditions and that the state is prohibited from setting reimbursement rates solely on budgetary considerations.

DMS filed a Motion to Dismiss appellants' Petitions for Declaratory and Injunctive relief for failure to exhaust administrative remedies. The Motion to Dismiss was granted and this appeal followed.

Appellants argue on appeal that their Petitions for Declaratory and Injunctive relief challenged the validity of the application by DMS of the rescinded regulations for reimbursement under the Old Plan. Appellants argue that application of the Old Plan regulations after the Old Plan had been rescinded was illegal. Appellants argue that they are not required to exhaust administrative remedies under the circumstances herein for three reasons: 1) because the application by DMS of their regulations reducing appellants' reimbursement rate violates the Equal Protection clauses of The United States and Missouri Constitutions by treating them different than other nursing homes and further is a denial of due process because they were not afforded a hearing; 2) because an unfavorable administrative determination would result in irreparable harm, and 3) because application of the doctrine of exhaustion of administrative remedies should not be strictly applied without consideration of the policies underlying the doctrine.

■ Missouri follows the exhaustion of administrative remedy doctrine where an administrative remedy must be exhausted before a court may give injunctive or declaratory relief. *Westside Enterprises, Inc. v. City of Dexter*, 559 S.W.2d 638, 640 (Mo.App.1977). Furthermore, such a remedy is generally exclusive, and failure to exhaust it deprives a court of jurisdiction to give equitable or declaratory relief. *Id.* Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may

have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review. *State ex rel. Missouri State Board of Registration for the Healing Arts v. Hartenbach*, 768 S.W.2d 657, 659 (Mo.App.1989); citing *State ex rel. J.S. Alberici v. City of Fenton*, 576 S.W.2d 574 (Mo.App.1979).

■ An exception to the exhaustion requirement is recognized under some circumstances where a constitutional challenge to a statute, which statute formed the only basis for denial of relief, is the only issue presented. *State ex rel. Missouri State Board of Registration for the Healing Arts v. Hartenbach*, 768 S.W.2d at 659. Like statutes, rules or regulations of a state administrative agency which have been duly promulgated pursuant to properly delegated authority have the force and effect of law. *Woodall v. Director of Revenue*, 795 S.W.2d 419 (Mo.App.1990). Therefore, a direct constitutional challenge to a regulation of a state administrative agency, with no other issue presented, would not require exhaustion of administrative remedy.

■ In the case at bar, appellants do not challenge the constitutionality of a regulation directly. Appellants challenge the application of state regulations to them, claiming that the state's application of the regulations in question violated their constitutional rights. Appellants' challenge in reality involves the construction and application of state regulations as applied to them and in comparison to others in like circumstances.

A challenge to the construction and application of a law does not involve a constitutional challenge in an appellate jurisdictional sense. *State v. Zilafro*, 206 S.W.2d 496 (Mo.1947). Likewise, a challenge to the construction and application of an administrative regulation which requires a review of the facts relating thereto presents matters other than purely legal issues of constitutionality. Such a challenge requires exhaustion of administrative remedies to develop a factual record for review.

Furthermore, the fact that appellants have chosen to seek administrative review and have raised questions of fact within their administrative complaints shows that their "constitutional" challenge is not the sole basis of their complaint. It is inconsistent for appellants to seek a factual review before the AHC and to request at the same time Declaratory and Injunctive relief. It is likewise inconsistent for appellants to complain in their Petitions For Declaratory and Injunctive Relief that they were denied due process by not being afforded a hearing and then to argue in this appeal that they should not be required to exhaust their remedy of an administrative hearing.

Another exception to the exhaustion requirement is as set forth under § 536.050.1, which provides, in pertinent part, as follows:

> The power of the courts of this state to render declaratory judgments shall extend to declaratory judgments respecting the validity of rules, or of threatened applications thereof, and such suits may be maintained against agencies whether or not the plaintiff has first requested the agency to pass upon the question presented.

The non-exhaustion rationale of § 536.050.1 rests on the distinction between an agency rule and an agency decision. *Missourians For Separation Of Church And State v. Robertson,* 592 S.W.2d 825, 836 (Mo.App.1979). An agency rule is a statement of policy or interpretation of law of future effect which acts on unnamed and unspecified persons or facts. *Id.* at 841. An agency decision engages the agency expertise on specific facts and requires exhaustion of administrative remedies. *Id.* at 836.

Appellants' underlying actions involve specific and named parties and are based upon specific factual backgrounds. Appellants' actions do not avoid exhaustion of administrative remedies as challenge to an agency rule.

No Missouri cases are cited by appellants or found by this court in support of appellants' arguments that they should not be required to exhaust administrative remedies because they allege irreparable harm or because they argue that the doctrine of exhaustion should not be strictly applied without consideration of the underlying policies of the doctrine. We decline to so expand the doctrine.

The judgment of the trial court is affirmed.

All concur.