**DRURY DISPLAYS, INC., and Gordon F. Webb, Appellants,**

v.

**CITY OF RICHMOND HEIGHTS, Brainerd W. Latourette, and David Reary, Respondents.**

No. 69003.

Missouri Court of Appeals, Eastern District, Division Three.

March 26, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1996.

Application to Transfer Denied June 25, 1996.

John S. Meyer, Jr., Jay L. Kanzler, Jr., Bryan Cave L.L.P., St. Louis, for appellants.

Kenneth J. Heinz, Curtis, Oetting, Heinz, Garrett & Soule, P.C., Clayton, for respondents.

GARY M. GAERTNER, Judge.

Appellants, Drury Displays, Inc., and Gordon Webb, appeal the judgment of the Circuit Court of the County of St. Louis dismissing their petition against the City of Richmond Heights, Brainerd LaTourette (the mayor of Richmond Heights), and David Reary (the city's building commissioner) (collectively "the city"), for failure to exhaust administrative remedies. We affirm.

Webb owns a home at 1155 Francis Place, located in the City of Richmond Heights. The structure sits on a lot fifty feet wide by 150 feet deep. After purchasing the property in 1981, he converted the house into offices which are currently occupied by several different tenants. The buildings on the 1100 and 1200 blocks of Francis Place are predominantly single family homes, although much of the area surrounding Webb's property and the other homes is commercialized.[1]

In May of 1991, the city zoned the area east of Brentwood Boulevard, including Webb's property, a Planned Development District ("PDD"), further subclassified for future planned commercial growth. This was in accordance with the city's plan for the coordinated development of the Brentwood Boulevard Corridor, of which the Galleria shopping mall was a part. Under the PDD, all existing uses were deemed non-conforming but allowed to continue in their current use. However, for any expansion or further development of any of the non-conforming uses, the property owners would have to comply with the regulations enacted to further the area's comprehensive development.

In the late summer and early fall of 1994, Webb began negotiating with Drury Displays, Inc. ("Drury"), about the company's use of Webb's property for an outdoor advertising structure. The parties thought the property's location adjacent to Highway 170 ideal for such a venture, and a lease was signed on September 19, 1994. The lease allowed Drury to erect a structure supporting two sign faces, each face to be fourteen feet high by forty-eight feet wide, and standing between seventy-seven and seventy-eight feet high, on the yard of Webb's property.

After entering this lease, Drury requested a letter from the city stating the property's

1. The area is located on the east side of Brentwood Boulevard, across the street from the Galleria, adjacent to Highway 170.

zoning classification in order to obtain the requisite state billboard permit.[2] The city sent a current zoning map showing the area and the current zoning classifications. Drury and Webb took issue with the city's response, contending it and its agents did not cooperate nor comply with the request. The city argues it provided them with the information needed but merely not in the exact format in which it was requested. The dispute resulted in Webb and Drury filing suit against the city, which they allege was necessary to make the city comply with their zoning request. Webb and Drury took the deposition of one of the city clerks, who stated the property was zoned "planned development commercial." On the basis of this testimony and a state permit application, on which a Drury representative represented the property was "zoned commercial," the Missouri State Highway and Transportation Commission issued the permit on November 18, 1994. Webb and Drury then compiled the necessary documents and, on November 23, applied to the city for a building permit.

While the application was pending, the city was in the process of amending Ordinance 4362, its ordinance regulating signs. Ordinance 4362 generally banned any "on-premises sign" which advertised an article not manufactured or sold or a service not rendered on the premises, and "off-premises signs" in all zoning classifications. Recent litigation in the St. Louis area had given the city cause to believe the ordinance violated the state's Billboard Act.[3] The amended ordinance, Ordinance 4566, would allow off-premises signs in areas zoned C–1 and C–2, the city's commercial zoning classifications, but would still prohibit such signs in areas zoned PDD's. Ordinance 4566 was to go into effect on December 4, 1994. On December 1, Webb and Drury sought and were granted a temporary restraining order preventing the city from applying the amended ordinance against them.

In a letter dated December 7, David Reary, the city's building commissioner and the officer in charge of issuing building permits, denied Webb and Drury's permit request on a number of grounds. These grounds included the applicants' failure to submit a development plan in accordance with the PDD ordinances, failure to demonstrate the materials forming the structure and sign faces were non-combustible and corrosion-resistive in accordance with the building code (Ordinance 4201), failure to demonstrate the minimum distance required between the rooftop and the bottom of the sign in accordance with the building code, failure to comply with various provisions of Ordinance 4238 regulating structure height and minimum front yard requirements, and failure to furnish an electrical permit necessary because the sign structure was to be lighted. Reary did not rely on Ordinance 4362, nor did he apply Ordinance 4566.

Anthony Mariani, the real estate manager for Drury Displays, responded to some of these concerns, also by letter. However, problems concerning the lack of a development plan, the height of the structure and the front yard requirements, and the missing electrical permit were not addressed at all, and his response with respect to the material for the sign faces needed further clarification. Despite being notified of these defects, neither Webb nor Drury responded further.

Instead, they filed an amended petition with the circuit court. The petition alleged in part:

14. On November 23, 1994, [Drury] filed an application for a Building Permit with the City for the construction of an outdoor advertising sign on the Property.... [Drury] was told by the City that the Building Commissioner would be on vacation until December 5, 1994, and that no action could be taken ... until his return. In the interim, the City attempted to enact Ordinance [4566] ... which ordinance was to become effective December 4, 1994. The effect of Ordinance [4566] would have

---

2. Pursuant to RSMo § 226.550 (1994), a state permit must be obtained in order to erect a billboard. Hereinafter, all references are to RSMo 1994.

3. RSMo §§ 226.500–226.600.

been to prohibit an outdoor advertising sign on the Property.

\*　　\*　　\*　　\*　　\*　　\*

16. The application for a Building Permit submitted by [Drury] meets all valid, enforceable criteria and/or [Drury has] demonstrated why [it is] entitled to the immediate issuance of a permit by the City authorizing the erection of the outdoor advertising sign.

17. The City and the Building Commissioner's refusal to process and approve [Drury's] application constituted, and continues to constitute, an unlawful de facto ban on all outdoor advertising signs within the City in direct violation of the decision in *National Advertising*.

18. The actions of the City, the Mayor and the Building Commissioner, in refusing to accept, process or approve the application for the erection of an outdoor advertising sign on the property, were, and continue to be arbitrary, capricious, unauthorized and illegal under the decision in *National Advertising*.

\*　　\*　　·\*　　\*　　\*　　\*

20. The City's violation of the law is of a repeated and continuing nature. Unless the City's ban on outdoor advertising signs is lifted immediately so that [Drury] can obtain a Building Permit from the City and can begin construction, Drury might lose its State Permit.

Count I of the petition sought injunctive relief, "enjoining [City] from refusing to accept, and expeditiously process and approve the application for Building Permit for an outdoor advertising sign located on the Property within the City, and from refusing to issue a Building Permit pursuant to such application," and "[r]equiring [City] to accept and expeditiously process and approve the application for a Building Permit, and to issue a Building Permit pursuant to such application...." Count II sought a writ of mandamus, alleging Drury had submitted an application "describing plans which conform to all requirements of the Building Code," and were therefore entitled to the issuance of a Building Permit. Drury and Webb also filed counts alleging violations of due process and unlawful taking, violations of the Missouri constitution, and requesting the temporary restraining order entered with respect to Ordinance 4566 be made permanent. The city filed a motion to dismiss the petition on the grounds that Webb and Drury failed to exhaust administrative remedies, which the court denied.

Also during this time period, the parties signed an agreement to pursue settlement negotiations for the purpose of facilitating a settlement and narrowing the issues raised. As part of this settlement, Webb and Drury and the city agreed to appeal to the Richmond Heights Board of Adjustment (the "Board") and to apply for a variance. In May, 1995, a public hearing was held before the Board. It found no error in the denial of the permit and denied the request for a variance. The parties' negotiations broke off at that time, and the city filed its answer and a cross-claim seeking a declaratory judgment.[4] The matter was tried on June 29 and 30, 1995. After both sides presented their evidence, the trial court dismissed the petition, *sua sponte*, for lack of subject matter jurisdiction due to Webb's and Drury's failure to exhaust administrative remedies. This appeal follows.

In their first point, Webb and Drury contend the trial court erred in dismissing their petition as they were challenging the validity of Richmond Heights' ordinances prohibiting billboards, claiming them to be invalid on their faces, which did not require them to exhaust administrative remedies. Their second point addresses the merits of their case and asserts the Richmond Heights' ordinances, Ordinance 4238 sections 310.0 *et seq.* and Ordinance 4362 regulating signs, conflict with and are therefore preempted by the Missouri Billboard Act, RSMo §§ 226.500–226.600. Their third point declares the trial

---

4. The cross-claim was dismissed by the court prior to trial and is not an issue here.

court erred in not finding the ordinances invalid as applied to Webb and Drury. Appellants' first point is dispositive.

 Missouri has long held that a party aggrieved by the action of an agency must exhaust his or her administrative remedies before resorting to an action at law or in equity. *State ex rel. Forget v. Franklin County,* 809 S.W.2d 430, 432 (Mo.App.E.D. 1991); *see Hernreich v. Quinn,* 168 S.W.2d 1054, 1058 (Mo. banc 1943). A recognized exception to this requirement exists where a party challenges the constitutionality of a statute, which statute forms the only basis for the agency's decision, with no other issue presented. *Boot Heel Nursing Center v. DSS,* 826 S.W.2d 14, 16 (Mo.App.W.D.1992). Likewise, a challenge to the validity of an ordinance is a challenge of a legislative function, which is not subject to review under the administrative scheme. *See State ex rel. Drury Displays v. Columbia,* 907 S.W.2d 252, 255 (Mo.App.W.D.1995).

Webb and Drury maintain the trial court erred in dismissing their petition because, as they were challenging the validity of city ordinances, exhaustion of administrative remedies was not required. We note at the outset, however, that neither of the ordinances cited by Webb and Drury in their points relied on is cited by Webb and Drury in their petition. The petition did not contain any count seeking declaratory relief as to the validity of either of the ordinances. Assuming, *arguendo,* appellants' petition did adequately allege the invalidity of the Richmond Heights' ordinances named in their points relied on, the trial court still lacked subject matter jurisdiction.

 Webb and Drury ignore a crucial aspect of the exception on which they rely: the ordinances being challenged must form the *exclusive* basis for the agency's decision, which, in this case, is the city's denial of the building permit. *See Boot Heel,* 826 S.W.2d

at 16. Here, Reary denied the permit application on a number of grounds. These included various sections of Ordinance 4238, sections of Ordinance 4201, and the failure to obtain an electrical permit.

Drury and Webb claim to be challenging Ordinance 4362, an ordinance wholly not relied upon by the city, and sections 310.0 *et seq.* of Ordinance 4238. While their position encompasses some of the city's reasons for denying the building permit, it fails to address all of the reasons underlying the city's decision. At trial, Mariani, Drury's agent, admitted he failed to respond to several of the concerns expressed by the city in denying the permit, specifically the failure to obtain an electrical permit and to adequately demonstrate the noncombustible nature of the proposed sign facings as required by Ordinance 4201.

These disputed issues had to be resolved through proper administrative procedures.[5] Instead, Webb and Drury sought relief in the form of mandamus in the circuit court. "[M]andamus relief is designed to enforce an unconditional legal right and not to adjudicate the existence of such a right." *Casey's Gen. Stores v. City of Louisiana,* 734 S.W.2d 890, 896 (Mo.App.E.D.1987). The record clearly demonstrated the trial court lacked jurisdiction to entertain the action. Therefore, we can find no error and need not address the merits of appellants' other claims.

Based on the foregoing, the judgment of the trial court is affirmed.

SMITH, P.J., and RHODES RUSSELL, J., concur.

---

5. Missouri has devised a specific set of procedures to be followed by a party aggrieved by a zoning decision. Such a party must first file a notice of appeal with the local Board of Adjustment in the manner established by local ordinance, and then seek review in the circuit court pursuant to a writ of certiorari. RSMo §§ 89.080–89.110.