STATE of Missouri, DEPARTMENT OF SOCIAL SERVICES, DIVISION OF CHILD SUPPORT ENFORCEMENT, ex rel. STATE OF MICHIGAN, Petitioner/Appellant,

and

Mae Green, Petitioner,

v.

Leother BRANCH, Respondent/Respondent.

No. 20409.

Missouri Court of Appeals, Southern District, Division Two.

July 30, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 21, 1996.

Michael S. Kisling, Department of Social Services Division of Legal Services, Jefferson City, for appellant.

Stephen L. Taylor, Burns & Taylor, Sikeston, for respondent.

CROW, Presiding Judge.

The Division of Child Support Enforcement ("DCSE") of the Department of Social Services appeals from a decision of the Circuit Court of Scott County ("the trial court").[1] The litigation arose from an attempt by DCSE to collect child support from Leother Branch. A coherent discussion of the issues confronting us is possible, if at all, only after a chronological account of the case's extraordinary journey to this court.[2]

The saga began August 12, 1992, when the Director of DCSE signed a document designated "Administrative Order on an Existing Order." The document was earmarked as DCSE form "CSE–616." For brevity, we henceforth refer to the document as "the CSE–616."

We gather from the record that the Director issued the CSE–616 pursuant to

---

1. Section 454.400.2(1), RSMo 1986, grants DCSE power to sue and be sued. That provision is carried forward unchanged in RSMo 1994 and RSMo Supp.1995.

2. As shall become evident *infra,* this case is a procedural imbroglio.

§ 454.476, RSMo 1986.[3] The CSE–616 stated that on June 9, 1986, the Circuit Court of Wayne County, Michigan, entered an order requiring Leother Branch[4] to provide support for a child born December 12, 1984. The CSE–616 declared Branch owed $11,567, exclusive of interest, and ordered him to pay the Clerk of the Circuit Court of Scott County ("the circuit clerk") a "Current Support Payment" of $40 per week, together with a "State Debt/Arrearage Payment" of $20 per week, for a total of $60. Payments were to begin August 18, 1992.

Simultaneously with issuing the CSE–616, the Director of DCSE signed a document designated "Order for Employer to Withhold and Pay Over." It was earmarked as DCSE form "CSE–700." For brevity, we henceforth refer to it as "the CSE–700."

The CSE–700 was directed to an official of the Office of Administration. It commanded the official to withhold $60 per week from Branch's earnings[5] and pay said sum to the circuit clerk.

A DCSE "child support technician" sent the CSE–616 and the CSE–700 to the circuit clerk with a directive to assign the matter a "court identification number" and "establish a case file." The circuit clerk stamped the documents "FILED" on August 20, 1992, opened a file, and assigned the case number

AO392–129. All documents thereafter filed in the trial court displayed that number.

The next recorded event occurred October 15, 1992, when Branch, through counsel, filed a "Motion for Temporary Stay Order" in the trial court. The motion averred Branch had received notice of "an order for employer to withhold pay and garnishment of wages without due process of law in accordance with Chapter 454 of the RSMo." The motion prayed the trial court to "temporarily" stay the CSE–616 and the CSE–700.

On November 13, 1992, DCSE, by counsel, filed an "Answer to Motion for Temporary Stay Order." The answer averred that any "stay order" should be entered only upon a showing of irreparable harm and should be conditioned upon a bond "designed to protect the interests of both sides, no matter who prevails." Additionally, the answer suggested that the trial court allow DCSE to continue collecting support payments, and that the circuit clerk "hold said funds in escrow pending resolution of this matter."

On November 25, 1992, Branch appeared by counsel in the trial court and, pursuant to prior notice, presented his Motion for Temporary Stay Order. We glean from the record that no one appeared for DCSE. The trial court entered a "Temporary Stay Order" providing: "[T]he Order of the Director of [DCSE] shall temporarily be stayed pend-

3. Section 454.476, RSMo 1986, reads, in pertinent part:

"1. If a court order has previously been entered, the director may enter an administrative order in accordance with the court order, upon receiving from ... a child support enforcement agency of another state, or the court:

[Here, the statute lists the required documentation.]

2. The obligor shall be sent a copy of the administrative order by certified mail, return receipt requested....

3. Upon entry of the order, the director shall issue an order directing an employer ... to withhold and pay over money due or to become due to the obligated parent as set out in section 454.505.

4. The obligor, within fourteen days after receiving notice of the director's order, may request an administrative hearing as provided in section 454.475 to contest the order or withholding thereunder. At such hearing, the certified copy of the court order and the ...

statement of arrearages shall constitute prima facie evidence that the director's order is valid and enforceable. Once the prima facie case is established, the obligor may assert only mistake of fact as a defense. Mistake of fact shall mean an error in the amount of arrearages or an error as to the identify of the obligor. The obligor shall have the burden of proof as to these issues....

5. If the obligor requests a hearing, the withholding will be implemented unless the obligor posts a bond or other security satisfactory to the director to insure payment of support.
...."

4. Mr. Branch is designated "Respondent" in the CSE–616. However, in two documents in the legal file, lawyers for DCSE designate Mr. Branch as "Petitioner." Endeavoring to prevent confusion, we henceforth refer to Mr. Branch by his surname. We mean no disrespect.

5. The record reveals Branch is employed by the Missouri Department of Conservation.

ing hearing of this Court on *[indecipherable]*."

An entry on the trial court's docket sheet dated "11 25 92" shows, in pertinent part: "Temporary Stay Order filed. Copy mailed to Child Support Enforcment [sic]."

Thereafter, nothing pertinent to our disposition of this appeal occurred until June 22, 1993. On that date, DCSE and Branch, by their respective counsel, filed an "Agreement and Stipulation" in the trial court. It provided that the stay order of November 25, 1992, was modified to allow the Department of Social Services ("DSS") to "conduct the Administrative Hearing on the Administrative Order regarding [Branch]." The hearing was to be held within a specified time. The stay order was to remain in effect until DSS issued its decision, at which time the stay order would expire. The agreement further provided: "Any party aggrieved by the Decision issued by [DSS] ... may file a Petition for Review as provided by law."

On August 10, 1993, a hearing was conducted by an "Administrative Hearing Officer" designated by the Director of DSS to conduct "child support administrative hearings." During the hearing, this dialogue occurred between the Administrative Hearing Officer ("AHO") and the DCSE "child support technician" ("CST"):

"[AHO]: Was there an administrative hearing request submitted after the administrative orders were entered?

[CST]: No.

[AHO]: Well, how did this get to me as a Child Support hearing, only through the court action?

[CST]: Through the court action."

The CST presented sundry documents on which DCSE relied in issuing the CSE–616 and the CSE–700.

Branch, through counsel, claimed the June 9, 1986, order of the Michigan court (referred to in the third paragraph of this opinion) was invalid in that it is based on a summons ostensibly served on him in Michigan on January 30, 1985. Branch pointed out that the face of the summons shows it was valid

only during the period from August 8, 1985, until February 7, 1986. Branch also argued that an affidavit purporting to prove a copy of the Michigan court order was served on him by mail June 17, 1986, was defective in that the address attributed to him in the affidavit was his mother's address, not his.

Sworn as a witness by the AHO, Branch testified he was attending Lincoln University in Jefferson City, Missouri, on January 30, 1985, the date the Michigan summons was ostensibly served. Furthermore, avowed Branch, he had established residence in Missouri in August, 1984, and had no residence in Michigan thereafter. Branch asserted he received no "notification of this action" until a garnishment in 1991.

On September 8, 1993, the AHO issued a written decision which included a finding that as of March 31, 1993, Branch owed $12,367.04 under the Michigan court order. Consequently, the AHO held DCSE was justified in issuing the CSE–616 and the CSE–700 on August 12, 1992.

The AHO further found the Michigan court order "valid on its face." The AHO determined he lacked authority "to entertain a collateral attack on a foreign judgment in an administrative enforcement action brought by [DCSE]." The AHO emphasized that § 454.476.4 [6] provides that once a prima facie case is made, the obligor may assert only mistake of fact as a defense. The AHO concluded: "[E]ither [the trial] court or a Michigan court appears to be the proper forum for [Branch] to obtain resolution of his contention that the Michigan support order is invalid." The AHO affirmed the actions of DCSE "in all respects."

The parties disagree as to what occurred next.

Branch maintains he filed a "Petition For Review" on or about September 15, 1993, in the trial court. In support of that contention, Branch relies on an affidavit of a deputy circuit clerk dated April 10, 1996, which states, in pertinent part:

6. Footnote 3, *supra*.

"1. That on or about September 15, 1993, I was the Deputy Clerk of the Circuit Court in Scott County, Missouri.

2. That to the best of my recollection the Respondent, Leother Branch, filed a Petition For Review in the Circuit Court of Scott County on or about September 15, 1993.

3. That the Petition For Review has been inadvertently lost or misplaced.

4. That I have made a diligent effort to locate said Petition For Review but have been unable to locate it."

Understandably, the record on appeal filed by DCSE contains no copy of the Petition For Review. However, in an "Amended Application for Certiorari to Correct Record on Appeal and Motion for Direction by Appellate Court that Matter Omitted from Records [sic] on Appeal be Included," Branch implores us to include a copy of the Petition For Review in the record on appeal. He relies on Rules 81.12(e) and 84.03.[7] For brevity, we henceforth refer to the request identified in the second sentence of this paragraph as "the Rule 84.03 motion."

Attached to the Rule 84.03 motion is a copy of a two-page document identified by Branch as the Petition For Review. At the foot of it is a "Proof of Service" stating that a copy was mailed to "the attorneys of record of all parties" on September 15, 1993.

As explained more fully *infra,* DCSE stridently opposes the Rule 84.03 motion. We took the motion with the case. Our decision regarding it appears *infra.*

Returning to the activity in the trial court, the next relevant event occurred October 21, 1993, when the AHO filed the record of the August 10, 1993, hearing, together with a copy of his decision of September 8, 1993.

Eleven months later, on September 20, 1994, a lawyer for DCSE wrote the trial

court asking that "this matter [be] taken up for hearing at your convenience."[8]

The trial court conducted a hearing November 29, 1994. DCSE appeared by counsel[9]; Branch appeared in person and with counsel. At the outset of the hearing, Branch's counsel said: "We're here on our motion for review of an administrative proceeding.... [W]e have contested ... jurisdiction over the person." Branch's lawyer then announced he would call Branch as a witness.

DCSE's lawyer protested:

"I'd like to object at this time. My understanding is that the scope of—in judicial review, the evidence—only evidence that we should be hearing today under 536.140 is evidence that wasn't available at—at trial during that hearing. I think we—that your review should be based on the hearing transcript and order of the Judge [sic]. We shouldn't have to have additional evidence unless it is unreasonably excluded during the administrative hearing or unless it wasn't available at that time. And I don't think that's been established at this point."

The trial court took the objection "under advisement." Branch's lawyer thereupon elicited testimony from Branch, who essentially repeated what he had told the AHO.

Following the hearing, DCSE's lawyer sent the trial court a three-page letter citing statutes and cases.[10] We henceforth refer to the letter as "the post-hearing letter." The post-hearing letter referred the trial court to § 536.140.4, RSMo 1986, which governs presentation of evidence to a trial court in a proceeding for review of a decision of an administrative agency.

Seven months later, on July 13, 1995, this entry was made on the trial court's docket sheet:

---

7. Rule references are to Missouri Rules of Civil Procedure (1996).

8. The author of the letter was the third attorney of record for DCSE.

9. The lawyer appearing for DCSE was its fourth attorney of record, replacing the lawyer mentioned in footnote 8, *supra.*

10. The letter is dated December 1, 1994, but is stamped "FILED" by the circuit clerk December 12, 1994. It is unmentioned on the trial court's docket sheet.

"The Court now being fully advised and informed finds the issued [sic] in favor of the respondent."

DCSE brings this appeal from that order.[11]

Before confronting DCSE's assignments of error, we address the Rule 84.03 motion. In suggestions opposing it, DCSE insists that a record on appeal cannot be supplemented with a document "never presented to the trial court." DCSE maintains: "No party ... has ever produced a clerk file-stamped copy of the Petition for Review that [Branch] now tries to make a part of the record." Those contentions are fair argument on the record.

However, the statement of facts in DCSE's brief asserts: "The trial court set this matter for trial even though ... no pleading or petition for judicial review had been filed." That averment is disturbingly disingenuous.

In a letter to the circuit clerk dated August 28, 1995, requesting preparation of the legal file for this appeal, DCSE's lawyer[12] identified the documents to be included, one of which was: "Petition for Review." The only reasonable inference from the letter is that the "Petition for Review" referred to therein is the Petition For Review tendered to us by Branch with the Rule 84.03 motion. No other "Petition for Review" is mentioned anywhere in the legal file or transcript. It thus appears that on August 28, 1995, DCSE's lawyer believed the Petition For Review was on file in the trial court.

That assumption is buttressed by four facts enumerated earlier.

First, DCSE's lawyer wrote the trial court September 20, 1994, requesting that "this matter" be scheduled for hearing. The record shows nothing on file in the trial court awaiting a hearing as of that date. If the hearing requested in the September 20, 1994, letter was not a hearing on the Petition For Review, we cannot conceive what DCSE's lawyer was asking the trial court to hear. DCSE offers no explanation.

Second, at the outset of the hearing in the trial court on November 29, 1994, Branch's lawyer said the parties were there for a hearing on Branch's "motion" for "review of an administrative proceeding" in which Branch had contested "jurisdiction over the person." The only proceeding in which that issue had been raised was the hearing before the AHO on August 10, 1993. That hearing resulted in the AHO's decision of September 8, 1993. The Petition For Review tendered by Branch with the Rule 84.03 motion seeks judicial review of that decision.

Third, when Branch undertook to testify at the hearing in the trial court, DCSE's lawyer objected, citing § 536.140. That section governs presentation of evidence to a trial court in a proceeding for review of a decision of an administrative agency.

Fourth, the post-hearing letter to the trial court from DCSE's lawyer cites § 536.140.4, the statute mentioned in the preceding paragraph.

The only rational conclusion is that the Petition For Review tendered with the Rule 84.03 motion was on file in the trial court at the time of the hearing on November 29, 1994. In its brief, DCSE concedes its file contains a copy of the Petition For Review. Yet, despite the affidavit of the deputy circuit clerk, DCSE brazenly proclaims: "[Branch] has not filed with the trial court a petition for judicial review ... seeking relief from the administrative decision."

We suspect that in circumstances such as these, an appellate court is empowered to supplement a record by including a document filed in a trial court and subsequently lost. However, as we shall demonstrate, the outcome of this appeal is the same irrespective of whether Branch filed the Petition For Review in the trial court on or about September 15, 1993, or never. Consequently, the

11. The jurisdictional statement in DCSE's brief informs us that jurisdiction of this appeal lies in "the Missouri Court of Appeals for the Eastern District." The notice of appeal correctly states this appeal is taken to the Missouri Court of Appeals, Southern District.

12. This lawyer—the fifth attorney of record for DCSE—replaced the lawyer mentioned in footnote 9, *supra*.

Rule 84.03 motion is moot, and we need not rule on it in order to adjudicate this appeal.

The first of DCSE's two points relied on asserts the trial court was without jurisdiction to "enter any order in this cause." DCSE offers several reasons in support of that hypothesis. The first, as we comprehend it, is based on § 454.476.4.[13]

As we have seen, § 454.476.1 authorizes the Director of DCSE to enter an administrative order for child support based on an existing court order. Section 454.476.4 provides that the obligor named in the Director's order may, within fourteen days after receiving notice of the order, request an "administrative hearing" as provided in § 454.475 "to contest the order or withholding thereunder."

The record furnished us does not establish the date Branch received notice of the CSE–616 and the CSE–700. DCSE could have easily shown the date to the trial court (and us), as § 454.476.2[14] requires DCSE to send the obligor a copy of the administrative order "by certified mail, return receipt requested." DCSE's failure to present such readily available proof is astonishing.

Nonetheless, it is evident that Branch received notice of the CSE–616 and the CSE–700 no later than October 15, 1992. That was the date he filed his "Motion for Temporary Stay Order" in the trial court. As noted earlier, the motion prayed the trial court to temporarily stay the CSE–616 and the CSE–700.

Thereafter, the first act by Branch that could arguably be characterized as a request for an administrative hearing was the filing of the "Agreement and Stipulation" in the trial court on June 22, 1993, wherein DCSE and Branch agreed that DSS would conduct an administrative hearing "on the Administrative Order regarding [Branch]." By then, at least eight months had elapsed since Branch received notice of the CSE–616 and the CSE–700.

Furthermore, it will be recalled that the AHO, at the hearing August 10, 1993, asked whether an administrative hearing request was submitted "after the administrative orders were entered." The CST replied, "No." Branch did not dispute that response.

■ It is thus clear that Branch failed to request an administrative hearing within the required fourteen days after receiving notice of the CSE–616 and the CSE–700. § 454.476.4. Nonetheless, the AHO conducted the hearing and issued a written decision September 8, 1993. The obvious question is whether the AHO had authority to do so.

In *Cardinal Glennon Memorial Hospital Coffee Shop v. Director of Revenue*, 624 S.W.2d 115 (Mo.App.W.D.1981), two taxpayers sought administrative review by the Administrative Hearing Commission ("AHC") of tax assessments entered by the Director of Revenue. *Id.* at 116–17. The petitions for review were filed with the AHC after expiration of the thirty-day deadline imposed by statute. *Id.* The AHC dismissed the petitions as untimely. *Id.* The Western District of this Court affirmed the dismissals, stating:

"The neglect to comply with the statutory time for an appeal from an agency decision—whether to another administrative body or to the circuit court—results in lapse of jurisdiction and right of appeal."

*Id.* at 118.

That principle was subsequently applied in *Casey v. Department of Social Services*, 727 S.W.2d 462 (Mo.App.E.D.1987). There, a physician's Medicaid vendor status was terminated by DSS. *Id.* at 463. The physician filed an appeal to the AHC three days after expiration of the thirty-day deadline imposed by statute. *Id.* The AHC dismissed the appeal for lack of subject matter jurisdiction. *Id.* The physician then filed a petition for review in the trial court. *Id.* That court granted a motion for summary judgment by DSS. *Id.* On appeal by the physician, the Eastern District of this Court, citing *Cardinal Glennon*, 624 S.W.2d at 118, affirmed the trial court. The opinion in *Casey* explained that authority to review an administrative agency decision is a question of subject matter jurisdiction, and that unlike personal jur-

---

**13.** Footnote 3, *supra.*

**14.** Footnote 3, *supra.*

isdiction, subject matter jurisdiction cannot be waived. 727 S.W.2d at 463. Accordingly, *Casey* held the AHC properly dismissed the physician's appeal for lack of subject matter jurisdiction. *Id.*

In *Fayette No. 1, Inc. v. Missouri Department of Social Services,* 853 S.W.2d 393 (Mo. App.W.D.1993), two health care facilities sought review by the AHC of decisions by DSS regarding funds for Medicaid services. *Id.* at 394–95. The AHC dismissed the petitions for review because they were filed after expiration of the deadline imposed by statute. *Id.* at 395. After failing to obtain relief in the trial court, *id.* at 394, the complainants appealed to the Western District of this Court, which held:

"Appellants' failure to file a timely appeal with the [AHC] divests both the [AHC] and the circuit court of subject matter jurisdiction over the case."

*Id.* at 396[2].

Applying *Cardinal Glennon, Casey,* and *Fayette No. 1, Inc.,* we hold Branch's failure to request an administrative hearing within fourteen days after receiving notice of the CSE–616 and the CSE–700 divested DSS (and consequently the AHO) of subject matter jurisdiction to review those orders.

■ Subject matter jurisdiction cannot be waived, nor can it be conferred by stipulation of the parties. *Groh v. Groh,* 910 S.W.2d 747, 749[3] (Mo.App.W.D.1995); *Johnson v. Director of Revenue,* 879 S.W.2d 754, 755[2] (Mo.App.E.D.1994). Consequently, the "Agreement and Stipulation" filed in the trial court June 22, 1993, did not confer jurisdiction on DSS or the AHO to review the CSE–616 and the CSE–700. We therefore hold the administrative review proceeding conducted pursuant to the "Agreement and Stipulation" was a nullity.

That, in turn, is fatal to Branch's effort to obtain judicial review. In *Lewis v. Roskin,* 823 S.W.2d 152 (Mo.App.E.D.1992), DCSE entered a child support order based on a Texas decree. *Id.* at 153. The obligor requested an administrative hearing per § 454.476.4, but abandoned the request prior to the hearing. *Id.* He later sought relief in the trial court, complaining, *inter alia,* that

the administrative hearing process violated his constitutional rights. *Id.* The trial court dismissed the action for failure to exhaust administrative remedies. *Id.* The Eastern District of this Court affirmed, stating: "It is well settled that administrative procedures must be exhausted before other relief may be granted.... [The obligor's] failure to follow administrative procedure for review was fatal." *Id.* at 154.

Applying *Lewis,* we hold Branch failed to exhaust his administrative remedy by failing to request an administrative hearing within the period specified by § 454.476.4, and such defect bars him from obtaining judicial review. Consequently, even if we assume, arguendo, that he filed the Petition For Review in the trial court on or about September 15, 1993, the trial court was powerless to grant relief.

■ In so holding, we are mindful that the only defense Branch raised before the AHO was that the Michigan court order was invalid because he was never served with summons in the Michigan case or, alternatively, that the summons ostensibly served on him was a nullity. As reported earlier, the AHO held he lacked authority to adjudicate Branch's collateral attack on the Michigan order. It could thus be argued that Branch should be excused from exhausting his administrative remedy before seeking judicial review.

■ *Boot Heel Nursing Center, Inc. v. Missouri Department of Social Services,* 826 S.W.2d 14, 16[2] (Mo.App.W.D.1992), recognizes there is an exception to the exhaustion requirement where a party seeking relief from an administrative order raises a constitutional challenge to the statute under which the agency acted, and the challenge is the only issue presented. However, Branch does not attack the constitutionality of any statute; the "due process" complaint in his "Motion for Temporary Stay Order" turned out to be only a contention that the Michigan court order was invalid because of lack of service of summons. Consequently, *Boot Heel* does not excuse Branch from the exhaustion requirement.

Neither does *Dye v. Division of Child Support Enforcement*, 811 S.W.2d 355 (Mo. banc 1991), cited by Branch. That case held a constitutional challenge to the statute involved there was not barred in the trial court even though the challenge was not raised at the administrative hearing. *Id.* at 357[1]. That was because the hearing officer lacked authority to decide the issue. *Id.*

However, even if we assume, arguendo, that Branch was excused from the exhaustion requirement, and even if we further assume, arguendo, that he filed the Petition For Review in the trial court on or about September 15, 1993, he was time-barred from judicial review of the CSE–616 and the CSE–700. We determined earlier that he received notice of those orders no later than October 15, 1992. He does not claim he filed the Petition For Review any earlier than September 15, 1993.

As previously explained, when the Director of DCSE enters a child support order per § 454.476.1,[15] the obligor has a right under § 454.476.4 to request an administrative hearing "as provided in section 454.475." Subsection 5 of § 454.475, RSMo 1986 (the version in effect when the CSE–616 and the CSE–700 were issued), provides that a parent adversely affected by the result of the administrative hearing may obtain judicial review under sections 536.100 to 536.140 by filing a petition for review in the circuit court of proper venue within thirty days of receipt of notice of the decision.

Section 536.110.1, RSMo 1986 (the version in effect when the CSE–616 and the CSE–700 were issued), likewise sets a thirty-day deadline.

Inasmuch as Branch received notice of the CSE–616 and the CSE–700 no later than October 15, 1992, and does not claim he filed the Petition For Review any earlier than September 15, 1993, it is obvious that the Petition For Review was untimely.

The only document Branch filed in the trial court that was arguably within the thirty-day deadline was the "Motion for Temporary Stay Order." It did not assert the defense Branch ultimately raised before AHO (and thereafter in the Petition For Review), and did not purport to be a petition for judicial review. *Cf. Britz v. Reynolds*, 895 S.W.2d 645 (Mo.App.W.D.1995).

We therefore agree with DCSE that the trial court was without jurisdiction to take any action in this case other than to dismiss it for lack of subject matter jurisdiction. *Fayette No. 1, Inc.*, 853 S.W.2d at 396[2]; *Lewis*, 823 S.W.2d at 154[2]. Having decided that, we need not consider the other assignments of error in DCSE's brief.[16]

The trial court's order of July 13, 1995, is reversed and the case is remanded to the trial court with a directive to dismiss it for lack of subject matter jurisdiction.

MONTGOMERY, C.J., and PARRISH, J., concur.

---

**15.** Footnote 3, *supra.*

**16.** Branch filed a motion asking us to "dismiss" DCSE's brief. We took the motion with the case. Although DCSE's brief is not perfect, its flaws do not warrant our striking it. Branch's motion is denied.