Teri Lee GRAVES, Respondent,

v.

Gary Michael GRAVES, Appellant.

No. WD 54248.

Missouri Court of Appeals,
Western District.

March 31, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 1998.

John R. Shank, Jr., Gunn, Shank & Stover, P.C., Kansas City, for appellant.

Thomas E. Hankins, Gladstone, for respondent

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

LAURA DENVIR STITH, Presiding Judge.

Gary Graves appeals the trial court's order dissolving his marriage to Teri Lee Graves. First, he claims that the trial court erred in ordering him and Graves Machinery, L.L.C.

to execute a lease of property awarded to Mrs. Graves in the property distribution. He also asserts that the trial court erred in retaining jurisdiction over the issue of maintenance, in granting primary physical custody of the couple's children to Mrs. Graves, and in calculating his child support obligation. Mr. Graves also claims that the trial court erred in ordering him to pay Mrs. Graves' attorneys' fees and expert witnesses' fees. Finally, he argues that the trial court's order granting Mrs. Graves maintenance and attorneys' fees pending appeal was void.

We find that the trial court erred in its calculation of child support, and therefore remand for the trial court to correctly compute Mr. Graves' child support obligation. We also remand with directions for the trial court to order Mr. Graves to pay the lesser amount for Mrs. Graves' attorneys' fees and expert witnesses' fees stated in the judge's findings of fact. We affirm the judgment on Mr. Graves' remaining points on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Teri Lee Graves and Gary Michael Graves were married on November 2, 1979. They had three children together: Wesley Alan Graves, born on July 18, 1981, Emily Nicole Graves, born on December 18, 1984, and Laura Elizabeth Graves, born on January 5, 1988. The couple owned a limited liability company called Graves Machinery, L.L.C., which rented and sold heavy construction equipment. Graves Machinery, L.L.C. operated on a tract of land in North Kansas City, which it leased from the Graves.

After more than fifteen years of marriage, the couple separated in March 1996. Since the separation, the children have continued to live with Mrs. Graves. On August 28, 1996, Mrs. Graves filed a Petition for Dissolution of Marriage in Clay County, Missouri. At that time, the children were fifteen, eleven, and eight years old, respectively.

On March 10, 1997, the trial court entered a judgment dissolving the Graves' marriage. Among other items of marital property distributed, the court awarded Mr. Graves all right, title, and interest in Graves Machinery, L.L.C. The court awarded Mrs. Graves the real estate in North Kansas City on which Graves Machinery, L.L.C. operated. The court also ordered the couple to sign a twelve month lease, under which Mr. Graves leased the Graves Machinery premises in North Kansas City from Mrs. Graves for a monthly rent of $9,500. The trial court awarded Mr. and Mrs. Graves joint legal custody of their three children, with Mrs. Graves having primary physical custody. The court also ordered Mr. Graves to pay Mrs. Graves $2,422 per month for child support. Finally, the trial court ordered Mr. Graves to pay a portion of Mrs. Graves' attorneys' fees and expert witnesses' fees. This appeal followed.

## II. STANDARD OF REVIEW

An appellate court reviews a decree of dissolution of marriage the same as other court-tried cases and will affirm unless the trial court erroneously declared or applied the law, unless no substantial evidence supported the judgment, or unless the judgment was against the weight of the evidence. *Bullard v. Bullard,* 929 S.W.2d 942, 944 (Mo. App.1996); *Groh v. Groh,* 910 S.W.2d 747, 749 (Mo.App.1995). The court views the evidence and all favorable inferences in the light most favorable to the party prevailing. *Groh,* 910 S.W.2d at 749.

## III. ORDER TO EXECUTE LEASE

As previously noted, the trial court awarded Mr. Graves the couple's marital interest in Graves Machinery, L.L.C., making him the only member of the company, and awarded Mrs. Graves the real estate in North Kansas City which the company had been leasing and upon which the company operated. In his first point on appeal, Mr. Graves claims that the trial court erred in ordering him and Graves Machinery, L.L.C. to execute a twelve-month lease of the property awarded to Mrs. Graves in the property distribution for a monthly rent of $9,500. Although the trial court's judgment only ordered Mr. and Mrs. Graves to sign the lease prepared by the court, the lease itself listed Graves Machinery, L.L.C. as a lessee and included a signature line for Graves Machinery, L.L.C. to be signed by Mr. Graves as President.

■ Mr. Graves argues that the court did not have jurisdiction to divide property or exercise control over property that is legally owned by Graves Machinery, L.L.C. It is true that, in a dissolution decree, a court may not exercise control over property belonging to a corporation, even if one of the spouses is the sole shareholder of that corporation. *Levesque v. Levesque*, 773 S.W.2d 220, 222 (Mo.App.1989); *Penn v. Penn*, 655 S.W.2d 631, 632 (Mo.App.1983). The reason for this rule is that the shareholder does not have legal title to the property; title remains in the corporation. *Levesque*, 773 S.W.2d at 222; *Penn*, 655 S.W.2d at 632. Similarly, a member of a limited liability company does not have any interest in property owned by the company; rather, the property belongs to the company itself. § 347.061.1, RSMo 1994.

■ Where one spouse is the sole shareholder of a corporation, however, the court may order that spouse to cause the corporation to undertake certain acts, including the transfer of property. *Mehra v. Mehra*, 819 S.W.2d 351 (Mo. banc 1991). In *Mehra*, the couple owned a professional corporation known as Southside Medical Group, P.C. The corporation owned two insurance policies on the life of Mr. Mehra. Upon dissolution of the parties' marriage, the trial court awarded Mr. Mehra all shares in the corporation. The court then ordered Mr. Mehra "as sole shareholder of [Southside Medical Group, P.C. to] cause [the] corporation to transfer" the insurance policies to Mrs. Mehra. *Id.* at 356. On appeal, the Missouri Supreme Court distinguished previous cases holding that the dissolution court could not divide property belonging to a corporation, stating:

> These cases may be distinguished, however, on the basis that here the trial court did not allocate the corporate assets themselves as marital property, but directed husband, as sole shareholder under the court's decree, to cause the corporation to transfer the two insurance policies on his life to Rachna Mehra. Husband makes no showing this cannot be accomplished, and we conclude the trial court did not misapply the law in this regard.

*Id.* (footnote and citation omitted).

■ Similarly, here, the trial court did not attempt to distribute any property belonging to Graves Machinery, L.L.C., did not order any property belonging to the limited liability company to be turned over to Mrs. Graves, and did not directly order Graves Machinery, L.L.C. to sign the lease. Instead, the court ordered Mr. Graves to enter into a lease contract with Mrs. Graves, which was prepared and attached by the court to the dissolution decree. Just as the husband in *Mehra* was the sole corporate shareholder after the court awarded the couple's shares to him, so Mr. Graves was the sole member of the limited liability company after the court awarded the couple's interest to him. Under *Mehra*, the court therefore was within its authority in ordering Mr. Graves to cause the company to lease the property from Mrs. Graves.

While the court did not order Graves Machinery to sign the lease or to turn over any property to Mrs. Graves, it did put a signature line for Graves Machinery, to be signed by Mr. Graves as President, on the lease agreement which it attached to its order. As noted, we agree with Mr. Graves that to the extent the order and attached lease could be interpreted to be an order by the court to the company itself to sign the lease, the court was without authority to so order. We do not take the mere presence of the signature line on the lease to constitute an attempt by the court to exercise jurisdiction over the company itself, however, but rather simply as a recognition that Mr. Graves as President could commit the company to the lease and indeed would be the one who would sign on behalf of the company.

## IV. EXPERT WITNESS FEES

■ In Mr. Graves' second point on appeal, he argues that the trial court erred in ordering him to pay Mrs. Graves' expert witnesses' fees. At the hearing on the dissolution petition, Mrs. Graves presented the testimony of various expert witnesses. James Rosenbloom testified as to the value of Graves Machinery, L.L.C.; Al Engelstadt, of Ritchie Brothers Auctioneers, testified as to the value of the machinery owned by Graves Machinery, L.L.C.; and Noble John-

son, a real estate appraiser, testified as to the value of the commercial property located in North Kansas City. The trial court found that Mr. Graves should pay $9,750 toward the payment of Mr. Rosenbloom's fees, $3,000 toward the payment of the fees of Ritchie Brothers Auctioneers, and $250 toward the payment of Mr. Johnson's fees.

Section 452.355 authorizes the trial court to order a party in a dissolution proceeding to pay a reasonable amount of the other party's expert witness fees. *Faintich v. Faintich*, 861 S.W.2d 217, 220 (Mo.App. 1993). Section 452.355 states:

> The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

§ 452.355.1, RSMo 1994.

Here, the trial court specifically stated in its findings of fact that it had considered all of the relevant factors enumerated in Section 452.335, including the parties' financial resources. The court found that Mr. Graves had substantial income, while Mrs. Graves' earning capacity was limited. Therefore, the court found that Mr. Graves should pay all of the experts' fees. In its order, the trial court also explicitly stated that it "compared the relative financial circumstances of the parties and believes that [Mrs. Graves] will not be able to meet her reasonable needs without [Mr. Graves] contributing towards her attorney fees and expert witness fees." It was not unreasonable for the trial court to order Mr. Graves to pay the experts' fees.

Furthermore, the trial court did not order Mr. Graves to pay the entire amount of at least one of the expert witness's fee. Mr. Rosenbloom's total bill for this case was $12,250. Of that amount, $2,500 had been paid as of the time of trial, half by Mrs. Graves and half by Mr. Graves. Therefore, there was only $9,750 remaining to be paid.

Mr. Graves argues that he should not have been ordered to pay these experts' fees because their testimony was not credible, the accuracy of their valuations was not reliable, and the trial court did not accept their valuations of the business and the real estate. For example, Mr. Graves points out that Mr. Rosenbloom is not a member of the American Society of Appraisers. Factors such as these go to the weight to be given to the witnesses' testimony, but do not affect whether Mr. Graves should have been ordered to pay the witnesses' fees. Although the trial court did not completely accept the valuations of Mrs. Graves' experts, it is obvious that the trial court took them into account when valuing the assets. The court set the value for these assets somewhere between the values estimated by Mr. and Mrs. Graves' experts. For example, Mr. Graves' expert valued the company at $257,000, Mrs. Graves' expert valued it at $1.1 million, and the trial judge set its value at $500,000. Therefore, the experts' testimony was not rejected by the judge.

Finally, Mr. Graves asserts that the trial court ordered him to pay more fees to expert witnesses than the court found to be reasonable. In its findings, the trial court found that Mr. Graves should pay $9,750 toward the payment of Mr. Rosenbloom's fees and $250 toward the payment of Mr. Johnson's fees. In the Order portion of its judgment, however, the court ordered Mr. Graves to pay $10,083 to Mr. Rosenbloom and $550 to Mr. Johnson. It is most likely this was a clerical error in the judgment. In any event, Mrs. Graves states in her brief that she will accept an award of the lesser amounts listed in the trial court's findings. Therefore, we remand with directions for the court to order Mr. Graves to pay the lesser amounts.

## V. MAINTENANCE

In his next point on appeal, Mr. Graves claims that the trial court erred in leaving the issue of maintenance open. In its order dissolving the Graves' marriage, the trial judge did not award Mrs. Graves any maintenance. The judge did, however, retain jurisdiction over the issue, stating:

The Court believes that Petitioner [Mrs. Graves] will be able to support herself through the rental proceeds that she will receive from the industrial real estate that she is being awarded herein. However, should there be an interruption in rent or should she encounter expenses of any significance, her ability to support herself would be severely compromised. Petitioner quit her job, at Respondent's urging, to care for Respondent's children by a previous marriage. Petitioner continued to stay at home to care for the three (3) children born of the parties' marriage. Petitioner spent the marriage as a stay-at-home mother and thereby sacrificed her opportunity for career advancement. Should the need arise, Respondent would be well able to contribute to the maintenance of Petitioner while, at the same time, providing for his own reasonable needs. Accordingly, the Court is leaving the issue of maintenance open.

Mr. Graves claims this was error because Mrs. Graves is capable of being self-sufficient.

The trial court has broad discretion in determining the amount of maintenance to award a spouse in a dissolution action, and the appellate court will not interfere absent an abuse of discretion. *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 66 (Mo. banc 1983); *Allen v. Allen,* 927 S.W.2d 881, 885 (Mo.App. 1996). However, "the trial court does not have unbridled discretion to retain jurisdiction over the maintenance issue." *Givens v. Givens,* 599 S.W.2d 204, 207 (Mo.App.1980).

This question of leaving maintenance open was first addressed under the new Missouri Dissolution of Marriage statute in *McBane v. McBane,* 553 S.W.2d 521 (Mo. App.1977). In that case, the wife had back trouble which required surgery and which affected her ability to work. The wife's doctor testified that the wife's probability of having a normal working life was less than that of an average person. At the time the couple's marriage was dissolved, however,

the wife was working and was self-supporting. Therefore, the trial court denied her maintenance. On appeal, the Kansas City District of the Missouri Court of Appeals examined case law from other jurisdictions and held that retaining jurisdiction over the issue of maintenance was appropriate. *Id.* at 523–24. The court stated:

> Where as here, and in the above cases, the evidence shows a physical condition existing at the time of the marriage dissolution which has a substantial potentiality for disabling the wife from remaining self-supporting, fairness to the wife requires that her existing physical condition be taken into account. It would be impractical to undertake to try to reduce the future possibilities to a present dollar allowance.

*Id.* at 524. Therefore, the court ordered that the trial court enter an award for nominal maintenance in order to retain jurisdiction over the issue of maintenance.[1] *Id.* at 525.

In *Bell v. Bell,* 641 S.W.2d 854 (Mo.App. 1982), the wife suffered from an eye disease called keratoconus. At the time of the dissolution of the couple's marriage, the wife was unemployed. At the hearing, two of the wife's doctors expressed doubt about her ability to work in the future. The trial court denied maintenance. On appeal, this Court held that the trial court erred in failing to retain jurisdiction over the issue of maintenance. Relying on *McBane,* the Court found that there was a "substantial potentiality" that the wife would not be able to remain self-supporting. *Id.* at 856. Therefore, the Court modified the dissolution decree to award nominal maintenance and retain jurisdiction over the issue. *Id.*

In *Bushhammer v. Bushhammer,* 816 S.W.2d 271 (Mo.App.1991), the wife had surgery to remove a brain tumor. When the parties' marriage was dissolved, the court found that the wife was capable of supporting herself through her disability benefits, because she was currently living with and being cared for by her parents. Therefore, the court awarded the wife nominal maintenance

---

1. A court no longer needs to make an award of nominal maintenance in order to retain jurisdiction over the issue, but may retain jurisdiction by expressly indicating in its order that it is doing

so. *Bushhammer v. Bushhammer,* 816 S.W.2d 271, 274 n. 1 (Mo.App.1991); *Givens v. Givens,* 599 S.W.2d 204, 207 (Mo.App.1980).

and retained jurisdiction over the issue. On appeal, this Court affirmed, holding that the trial court had not abused its discretion in retaining jurisdiction over the issue of maintenance. *Id.* at 275. The Court pointed to the evidence that if, at some time in the future, the wife was no longer able to live with and be cared for by her parents, her disability payments would not provide sufficient income to meet her reasonable needs. *Id.*

In contrast, in *Abney v. Abney,* 575 S.W.2d 842 (Mo.App.1978), the St. Louis District of the Missouri Court of Appeals held that the trial·court's award of maintenance was not supported by substantial evidence. In that case, the wife had surgery to remove a brain tumor. Although she was off work for five months, she returned to work after that and was working at the time of the dissolution. Nonetheless, the trial court awarded the wife maintenance. On appeal, the court did not accept the wife's argument, based on *McBane,* that her physical condition entitled her to maintenance. The court noted that there was no testimony, expert or otherwise, of the wife's prognosis or future disability. *Id.* at 844. The court distinguished *McBane* because in that case there was expert medical testimony of the wife's future incapacity. The court stated:

> However, the *McBane* extension of the considerations for maintenance become applicable only when the potential for future inability to work is established by evidence exceeding mere guesswork or speculation. Mere suppositions of future inability to work are not adequate.

*Id.* Therefore, the court remanded to give the wife an opportunity to establish her entitlement to a maintenance award under the *McBane* standard.

Similarly in *Givens v. Givens,* 599 S.W.2d 204 (Mo.App.1980), the wife had no disability and was able to support herself with her own salary at the time of dissolution. Nonetheless, the trial court retained jurisdiction over the issue of maintenance. On appeal, the Eastern District, relying on *Abney,* held that the trial court had abused its discretion. *Id.* at 207.

■ Here, the trial court recognized that in this unique situation, Mrs. Graves may require maintenance in the future. In contrast to *Abney* and *Givens,* Mrs. Graves was not working full-time at the time of the dissolution, had not worked at a full-time job since her marriage to Mr. Graves, and testified that she could not support herself through appropriate employment. Her only income is the proceeds from leasing the land in North Kansas City to Mr. Graves and her limited part-time earnings.

Moreover, Mr. Graves was ordered to sign a lease for only one year; the judge indicated that he hoped that the Graves would be able to work matters out after that period. If not, Mrs. Graves must either find a new tenant or sell the property. There was no evidence that either alternative is feasible. To a large extent, therefore, her source of income is completely within the control of her ex-husband. The judgment makes clear that the judge was well aware of this fact and was not confident Mr. Graves would pay the lease payments, much less extend the lease. The trial judge examined the parties' financial resources and specifically found that Mrs. Graves would not be able to support herself without the rental income from the commercial property. It was reasonable for the judge not to want to place Mrs. Graves' financial stability in Mr. Graves' hands. Therefore, the trial court did not abuse its discretion in retaining jurisdiction over maintenance, and it was not required to order nominal maintenance in order to so. However, we note that use of the phrase "the court is leaving the issue of maintenance open" could cause some confusion as to the finality of the judgment. It would be preferable to, on remand, amend the order to simply state that the court retains jurisdiction on the issue of maintenance.

## VI. CHILD CUSTODY

In his fourth point on appeal, Mr. Graves argues that the trial court's judgment granting Mrs. Graves primary physical custody of the couple's children was against the weight of the evidence. In the judgment, the trial court awarded the parties joint legal custody,

with Mrs. Graves being designated the primary physical custodian.

The trial court must determine custody arrangements in the best interests of the child. 452.375.2, RSMo Cum.Supp.1996. We will sustain the court's judgment on custody unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Rogers v. Rogers,* 923 S.W.2d 381 (Mo.App.1996). The trial court has broad discretion in this area, and we will not disturb its judgment unless it is clearly against the logic of the circumstances or is arbitrary or unreasonable. *Hankins v. Hankins,* 920 S.W.2d 182, 187 (Mo.App.1996). On appeal of a custody order, we review the evidence in the light most favorable to the trial court's decision. *Alt v. Alt,* 896 S.W.2d 519 (Mo. App.1995).

Here, there was sufficient evidence that awarding Mrs. Graves primary physical custody was in the children's best interests. Shortly after she and Mr. Graves were married, Mrs. Graves quit her job to stay at home because they were trying to get custody of Mr. Graves' two children from a previous marriage. It was emphasized in that case that the Graves should be granted custody because Mrs. Graves would be at home to care for the children. After the Graves were granted custody, Mrs. Graves stayed at home to raise Mr. Graves' children along with her daughter from a previous marriage. Mr. and Mrs. Graves also had three children during their marriage. For a large percentage of the parties' marriage, Mrs. Graves has not been employed outside the home and has been the parent primarily responsible for raising the couple's three children. The court found that "[t]he children have a close and loving relationship with their mother, who has been active and involved in the day-to-day duties of raising and caring for them. Respondent [Mr. Graves] has not been nearly as involved in the children's lives as has Petitioner [Mrs. Graves]." Mr. Graves testified that at the beginning of the marriage he worked long hours and frequently travelled for work. At his deposition, Mr. Graves did not know many of his children's teachers and was not involved with their activities. The court also found that, contrary to Mr. Graves' assertion, Mrs. Graves was an average housekeeper and her housekeeping had not had any negative effect on the children. The trial court clearly acted in its discretion in awarding Mrs. Graves primary physical custody.

## VII. CHILD SUPPORT

In his next point on appeal, Mr. Graves claims that the trial court erred in calculating his child support obligation because it did not fully consider Mrs. Graves' income sources. In ordering child support, the trial judge stated:

7. The facts the Court relied upon in making its determination and award of child support, including which Form 14 was relied upon. The Court finds that Respondent's income-earning ability is in excess of the $15,000 per month maximum set forth in the tables accompanying Form 14. Accordingly, the Court calculates Respondent's child support obligation by using $15,000 to represent Respondent's monthly income and zero to represent Petitioner's monthly income. The Court further finds that, should Petitioner obtain full-time employment, her day care expenses would be such that Respondent's child support obligation would increase, not decrease. Child support is thus calculated to be $2,422 per month.

Mr. Graves first argues that the trial court failed to include Mrs. Graves' actual income from working part-time for the North Kansas City School District. Clearly, the trial court should have included this amount in Mrs. Graves' gross income on Form 14. "Gross income includes income from any source ... and includes but is not limited to income from salaries, wages...." **Directions for Completion of Form 14.**

Mr. Graves also claims that the trial court should have imputed income to Mrs. Graves because she refuses to seek full-time employment. When determining a parent's child support obligation, the court may, in proper circumstances, impute income to the parent according to what she could have earned by using her best efforts to gain

employment. *State ex rel. O.A. by Atkinson v. Anthony*, 947 S.W.2d 832, 834 (Mo.App. 1997). The Directions for Completion of Form 14 acknowledge this by stating:

> If either parent is unemployed or under-employed, child support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court or administrative agency may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community, and whether that parent is custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

**Directions for Completion of Form 14.**

 Here, Mrs. Graves quit working shortly after the couple got married in 1979. For the seventeen years she was married, she was a homemaker and had primary responsibility for caring for the children. She now works part-time for her children's school district making $7.45 an hour. With this job, Mrs. Graves is able to be home when the children are at home. In addition, the court found that if Mrs. Graves were to work outside the home, she would incur substantial child care costs. *See Quackenbush v. Hoyt*, 940 S.W.2d 938, 943 (Mo.App.1997). Therefore, the trial court did not abuse its discretion in failing to impute income to Mrs. Graves for a full-time job.

 Finally, Mr. Graves argues that the trial court should have included in Mrs. Graves' income the $9,500 rent the court ordered Mr. Graves to pay for rental of the North Kansas City property. In computing Mr. Graves' child support ·obligation, the court treated Mrs. Graves as having no income. From the language used in the order,[2] it appears the judge may have done so because it considered the rental income as

funds to be used in lieu of maintenance to meet Mrs. Graves' personal needs, and maintenance a party receives from the other spouse in the dissolution is not included in gross income for child support purposes. *See, e.g., Runyan v. Runyan*, 907 S.W.2d 267 (Mo.App.1995); *Wagner v. Wagner*, 898 S.W.2d 649 (Mo.App.1995). Moreover, it only required Mr. Graves to sign a lease for one year, and may have been contemplating maintenance might be required thereafter. Be that as it may, the year of lease payments were not maintenance. Income from rent is expressly included in gross income for child support purposes.[3] Therefore, the $9,500 monthly payments Mrs. Graves should have been included in her income for the last year. The amount she earned in her part-time teaching position should also have been included.

 The judge also may have treated Mrs. Graves as having no income because it believed Mr. Graves should be responsible for all of the children's expenses, in light of the fact that his imputed monthly income of $40,000 is so much greater than Mrs. Graves' and is far in excess of the $15,000 which is the highest monthly income listed on the Schedule of Basic Child Support Obligations. It was no doubt aware that a court has no authority to order a parent to pay more child support than the maximum listed on the Schedule, no matter what his or her income, unless the court finds the amount so determined to be unjust and inappropriate. *See, e.g., Cyr v. Bodenhausen*, 946 S.W.2d 288, 290 (Mo.App.1997); *Mehra v. Mehra*, 819 S.W.2d 351, 354 (Mo. banc 1991) (stating that when the parties' combined monthly income is in excess of the highest income in the guidelines, the court should not extrapolate an amount of child support). It therefore simply awarded the highest amount listed on the schedule, even though that amount applied only when the custodial spouse had no

---

2. The trial court stated it did not award Mrs. Graves maintenance, at least in part because it believed she could "support herself through rental proceeds that she will receive from the industrial real estate that she is being awarded herein."

3. The Directions state:
 For income from rent, ... "gross income" is defined as gross receipts minus ordinary and necessary expenses required to produce income.
 **Directions for Completion of Form 14.**

income. It reached this result by simply treating Mrs. Graves as if she had no income.

While we can understand the reasons why the court might believe this approach was fair, the court cited no authority which permits it to ignore income which the record conclusively shows a party has earned, when determining child support under Form 14, and we have found none. Rather, if the court below believed that the amount of child support otherwise due under Form 14 was improper, and that Mrs. Graves should not be responsible for any child support and Mr. Graves should be responsible for an amount equal to the highest support level listed on the Schedule, the court was required to explicitly or implicitly find that the Form 14 amount was unjust and inappropriate. While we believe that this was probably what the court intended by its order, the language of the order is not sufficiently specific for us to hold that such a finding is implicit in the court's order. This portion of the order simply stated:

> 7. The facts the Court relied upon in making its determination and award of child support, including which Form 14 was relied upon. The Court finds that Respondent's income-earning ability is in excess of the $15,000 per month maximum set forth in the tables accompanying Form 14. Accordingly, the Court calculates Respondent's child support obligation by using $15,000 to represent Respondent's monthly income and zero to represent Petitioner's monthly income. The Court further finds that, should Petitioner obtain full-time employment, her day care expenses would be such that Respondent's child support obligation would increase, not decrease. Child support is thus calculated to be $2,422 per month.

As the assumption that Mrs. Graves had no income is contrary to the undisputed record, we are obliged to reverse and remand for redetermination of child support.

On remand, because the couple's combined monthly gross income is higher than $15,000, the court must enter the maximum amount of child support for three children from the Schedule of Basic Child Support Obligations. This amount is $2,422. The court cannot simply require Mr. Graves to pay all of this amount by presuming Mrs. Graves has no income, however. Rather, the trial court should include the rental proceeds in Mrs. Graves' gross income on Form 14 if the court again orders such payments or finds that they are likely to continue. It should also consider any other income of Mrs. Graves which is required to be included within the definition of gross income as that term is used in Form 14. The court should then determine the parties' proportionate share of the child support amount determined, based on their proportionate shares of combined income. Then, if the court continues to believe that Mr. Graves should pay all (or a proportionately greater) share of this amount than would otherwise be proper under the Form 14, it should enter an explicit finding that the presumed amount of child support is unjust and inappropriate. *See Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. 1996). It can then set the amount of support it deems it is just and appropriate for each parent to pay.

In making these determinations, the court of course may consider any relevant developments since it made its original order. It would be appropriate for the court to consider whether Mrs. Graves will need maintenance if she is to be required to make child support payments, or if the lease payments are no longer forthcoming, as either event would decrease the amount of money available for her own support.

## VIII. ATTORNEYS' FEES

Next, Mr. Graves claims that the trial court erred in ordering him to pay Mrs. Graves' attorneys' fees. In its judgment, the trial court found that Mr. Graves should pay $20,000 toward Mrs. Graves' attorneys' fees. In the order portion of the judgment, the trial court ordered Mr. Graves to pay $21,000 to Mrs. Graves' attorney.

An award of attorneys' fees is within the trial court's discretion, *Mehra v. Mehra*, 819 S.W.2d 351, 357 (Mo. banc 1991), and the court's ruling is presumptively correct, *Cohn v. Cohn*, 841 S.W.2d 782, 787 (Mo.App.1992). An appellate court will over-

turn the circuit court's order of attorneys' fees only if it finds an abuse of discretion. *Cyr v. Bodenhausen*, 946 S.W.2d 288, 291 (Mo.App.1997). "To demonstrate an abuse of discretion, the complaining party bears the burden of showing the award to be clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.* (citing *Meservey v. Meservey*, 841 S.W.2d 240, 248 (Mo.App. 1992)).

■ As a general rule, parties to a dissolution action pay their own attorneys' fees. *L.A.L. v. L.L.*, 904 S.W.2d 50, 55 (Mo.App. 1995); *Rich v. Rich*, 871 S.W.2d 618, 627 (Mo.App.1994). However, Section 452.355 gives the trial court discretion to order one of the parties to pay a reasonable amount of the other's attorneys' fees. That Section states:

> The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

§ 452.355.1, RSMo 1994.

■ Here, the trial court specifically stated in its findings of fact that it had considered all of the relevant factors enumerated in Section 452.335, including the parties' financial resources. The court found that Mr. Graves had substantial income, while Mrs. Graves' earning capacity was limited. Therefore, the court found that Mr. Graves should pay all of Mrs. Graves' attorneys' fees. In its order, the trial court also explicitly stated that it "compared the relative financial circumstances of the parties and believes that [Mrs. Graves] will not be able to meet her reasonable needs without [Mr. Graves] contributing towards her attorney fees and expert witness fees." Based on these factors, it was not an abuse of discretion for the trial court to order Mr. Graves to pay a portion of Mrs. Graves' attorneys' fees.

Mr. Graves argues that Mrs. Graves has the financial ability to pay at least a portion of the attorneys' fees herself. Mr. Graves points out that Mrs. Graves was awarded significant amounts of marital property, notably $9,500 per month in rental payments from the lease of the North Kansas City premises. First, it should be noted that neither Mr. Graves nor Graves Machinery, L.L.C. has in fact paid any rent for use of the premises since the final dissolution judgment in March 1997. Rather, Mr. Graves filed a supersedeas bond for $100,000 to cover the first six months of lease payments, and, as discussed below, has been ordered to pay temporary maintenance on appeal of $6,500 per month to make up for the lack of lease payments during the appeal. Second, even if Mrs. Graves had the means to pay the attorneys' fees, that fact is not dispositive. "A spouse's inability to pay is not a requirement for awarding attorney fees. One spouse's greater ability to pay is sufficient to support an award of attorney fees to the other spouse." *Cyr*, 946 S.W.2d at 291.

Again, Mr. Graves points out that the trial court found that he should pay $20,000 in attorneys' fees, but then ordered him to pay $21,000. Mrs. Graves stipulates that she will accept the lesser amount. Therefore, we remand with directions for the court to order Mr. Graves to pay the lesser amount.

## IX. TEMPORARY ORDER

In his final point on appeal, Mr. Graves argues that the trial court erred in awarding Mrs. Graves maintenance and attorneys' fees pending appeal. He claims that the court's order was void because no hearing was held and the order was therefore based on evidence presented approximately four months earlier at the dissolution hearing.

After Mr. Graves filed his notice of appeal, Mrs. Graves filed a Motion for Maintenance, Child Support, Attorney Fees and Costs Pending Appeal. She alleged that Mr. Graves had failed to pay the monthly rental for the property she received in the dissolution and without this money she was unable to support herself. On July 1, 1997, the trial judge entered a judgment granting Mrs. Graves $5,000 in attorneys' fees and $6,500 per month maintenance pending appeal.

■ "The circuit court has jurisdiction ... to entertain a motion for temporary maintenance pending appeal in such amounts and on such terms as are just and proper in the circumstances authorized by § 452.315." *Coleberd v. Coleberd,* 933 S.W.2d 863, 871 (Mo.App.1996) (quoting *Goller v. Goller,* 758 S.W.2d 505, 510 (Mo.App.1988)). Section 452.315 states:

> On the basis of the showing made and in conformity with section 452.335 on maintenance and section 452.340 on support, the court may issue a temporary injunction and an order for temporary maintenance or support in such amounts and on such terms as are just and proper in the circumstances.

§ 452.315.5, RSMo 1994.

■ Mr. Graves claims that Section 452.315 requires the court hold a hearing before ordering temporary maintenance pending appeal. Mr. Graves is unable to point to any evidence in the record that he requested a hearing, however. He therefore argues that he is automatically entitled to such a hearing. That is not the case. The trial court is not required to hold an evidentiary hearing on the issues of maintenance and attorneys' fees pending appeal where those issues have been recently determined in the underlying dissolution decree, unless the party opposing the motion asserts a change in financial circumstances since the dissolution hearing. *Dardick v. Dardick,* 661 S.W.2d 538, 543 (Mo.App.1983).[4]

Here, while Mr. Graves now alleges that there has been a change in the parties' financial circumstances since the decree of dissolution, he did not so allege in the trial court in support of his rather cursory suggestions in opposition to Mrs. Graves' motion for such temporary support. Moreover, the original decree had been entered only four months previously. In these circumstances, the judge was justified in relying on the extensive evidence in the dissolution proceeding when ruling on the motion for temporary maintenance and child support.[5]

In addition, the issue of whether Mr. Graves should be required to pay temporary maintenance is largely moot because we are affirming the portion of the judgment ordering Mr. Graves to rent the real property from Mrs. Graves. The court made clear that its award of temporary maintenance was not intended to be duplicative of any rental income she received, and if that part of the judgment of dissolution were affirmed, as it is today, any maintenance payments would be credited toward Mr. Graves' rental obligation.

For all of the foregoing reasons, the judgment is affirmed in part and reversed and remanded in part.

All concur.

---

4. Mr. Graves also relies on *Heins v. Heins,* 783 S.W.2d 481 (Mo.App.1990). In that case, the trial court denied the husband an opportunity to present evidence on his current financial circumstances, and instead based its award of attorneys' fees on appeal on the evidence presented at the dissolution. This Court reversed, holding that there was inadequate evidence in the record on which to base an award of attorneys' fees, such as the parties' financial conditions and the attorney's necessary work. Here, Mr. Graves makes no claim in his Point Relied On or in the Argument portion of his brief that there was insufficient evidence on which the court could base an award of attorneys' fees. Therefore, this aspect of Mr. Graves' argument is denied.

5. Because of our resolution of these issues, we do not reach Mrs. Graves' claim that Mr. Graves waived his right to a hearing nor do we address what evidence, if any, is properly before us on that issue.