Letha M. WHITE, Appellant,

v.

Gary MOORE, Respondent, Pro se.

No. WD 58994.

Missouri Court of Appeals,
Western District.

Oct. 16, 2001.

Sammie Edwards, Kansas City, for appellant.

Lori Stipp, Kansas City, guardian.

Before SPINDEN, C.J., SMART and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Letha White appeals a modification judgment awarding Gary Moore sole legal and physical custody of their minor child. Appellant claims three points of error: (I) there was no change in circumstance to justify modification of custody; (II) there was insufficient evidence to find modification was in the child's best interest; and (III) a psychologist's testimony was admitted into evidence without proper foundation. We affirm the trial court's judgment.

### Factual and Procedural History

Qualesha White was born August 6, 1993, of a non-marital relationship between Letha White (Mother) and Gary Moore (Father). Mother ended the relationship with Father shortly after the child's birth and began restricting Father's visits with the child. Father contacted the Missouri Division of Child Support Enforcement in an effort to establish his paternity, child support obligation, and visitation with Qualesha.

A paternity action was subsequently filed in Jackson County Circuit Court, where mediation resulted in a joint custody settlement between the parties. On May 27, 1997, the court entered a judgment establishing Father's paternity, ordering his child support payments, and approving the parties' joint custody plan.

Under the joint custody plan, Father's parenting time was to be phased in over a seven-month period, beginning with supervised two-hour weekly visits, graduating to unsupervised six-hour weekly visits, and

then unsupervised overnight visits every other weekend. Disputes erupted between the parties when the phase of unsupervised visits was scheduled to begin. Father claimed Mother was denying him visitation. Mother claimed Father was neither exercising visitation nor paying child support.

Father filed a motion to modify custody on December 1, 1997. Mother responded with a contempt motion on June 30, 1998. The court appointed a Guardian Ad Litem to represent the minor child.

At a hearing on both motions, the Guardian presented testimony from Dr. Gregory Sisk, a psychologist retained to provide therapeutic counseling for the parties and a written report of the counseling sessions. The court also heard testimony from Father and Mother and a statement from the Guardian summarizing her investigation.

Following the hearing, the court entered a modification judgment awarding Father sole legal and physical custody of Qualesha, with visitation rights to Mother. The judgment was based on the following findings:

> Phase II of the [joint custody] plan was never honored by Mother. Mother has consistently refused to obey the Court's visitation orders since 1997. Father did not have any unsupervised visits with Qualesha until June, 1999, when this court ordered therapeutic visitation to be monitored by psychologist, Gregory Sisk.

> Even while Father's Motion To Modify has pended, Mother has disobeyed this Court's visitation orders. Mother has made visitation very difficult for Qualesha. Mother has engaged in angry outbursts and emotional outbursts in the presence of the child including in the office of the psychologist. Mother's conduct has not been in the child's best interest and has caused the child emotional harm.

> Qualesha has been denied a normal Father-child relationship by her Mother. It is not in her best interests to remain in the joint legal custody of her parents with residential custody to Mother.

> Mother has harassed Father over the telephone at his home and at his work. She has acted in a manner to make it impossible for the parties to cooperate in a joint custody plan.

> Since the entry of the original judgment, the circumstances of the Mother and child have continuously and substantially changed such that it is not in the child's best interests to leave in effect the Court's judgment relating to custody, visitation and child support.

Mother appeals the judgment awarding custody to Father.

### Standard Of Review

■ Review of this court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The Court must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Huffman v. Huffman,* 11 S.W.3d 882, 885 (Mo.App. W.D.2000).

■ An appellate court should set aside a judgment as "against the weight of the evidence" if it firmly believes the judgment is wrong, *Buschardt v. Jones,* 998 S.W.2d 791, 796 (Mo.App. W.D.1999), or if the judgment is clearly against the logic of the circumstances or is arbitrary or unreasonable. *Graves v. Graves,* 967 S.W.2d 632, 640 (Mo.App. W.D.1998). We will not disturb the trial court's judgment unless we are firmly convinced that the welfare of the child requires some other disposition.

*Burkhart v. Burkhart,* 876 S.W.2d 675, 678 (Mo.App. W.D.1994).

In child custody matters, the trial court's determination must be given greater deference than in other cases. *Guier v. Guier,* 918 S.W.2d 940, 946 (Mo. App. W.D.1996). We presume that the trial court reviewed all the evidence and awarded custody in light of the best interests of the child. *Hartig· v. Hartig,* 738 S.W.2d 160, 161 (Mo.App. E.D.1987). The presumption is based upon the trial court's superior position to evaluate the credibility of witnesses. The resolution of conflicting evidence concerning the relative custodial fitness of a parent is left to the trial court with deference to be accorded its conclusions. *In re Marriage of Sisk,* 937 S.W.2d 727, 731 (Mo.App. S.D.1996). Therefore, "the judgment is to be affirmed under any reasonable theory supported by the evidence." *Jones v. Jones,* 10 S.W.3d 528, 532 (Mo.App. W.D.1999).

### Points I and II

Section 452.410 R.S.Mo.[1] permits a court to modify a custody order upon a showing that: 1) a change has occurred in the circumstances of the child or his custodian; and 2) that modification is necessary to serve the best interests of the child. Relying on this statute, Mother argues in Points I and II of her appeal that the trial court erred in modifying custody because there was no change of circumstances and the evidence was insufficient to show the modification served the child's best interests.

Appellant's argument ignores the trial court's specific finding that there had been a continuous and substantial change in the circumstances of Mother and Qualesha such that the prior custody order did not serve the child's best interests. In support of that finding, the judgment states that Mother failed to comply with previous visitation orders dating back to 1997. Mother did not allow Father unsupervised visits with Qualesha until June 1999, more than two years after the joint custody plan was ordered. Mother's telephone harassment of Father made cooperation impossible between the parties. Mother's angry outbursts caused the child emotional harm. The cumulative effect of Mother's conduct was to deny Qualesha a normal relationship with Father. The court therefore concluded that it was not in the child's best interest to remain in Mother's custody.

A "change in circumstances" can occur when a custodial parent interferes with the visitation rights of a non-custodial parent. *Lindell v. Coen,* 896 S.W.2d 525, 528 (Mo.App. W.D.1995). Such interference can affect the child's welfare and warrant modification of custody if the visitation denial is unjustified and follows a flagrant pattern. *Id.* The trial court's findings indicate that Mother's misconduct met this standard, making appropriate a transfer of custody to Father.

We further find that the trial court's findings were supported by substantial evidence presented at trial. Father testified that Mother repeatedly failed to show up at the designated location to exchange Qualesha for unsupervised visitation. When Father arrived at Mother's home for visitation, Mother either refused to answer the door or refused to give Qualesha to

---

1. Section 452.410. Custody, decree, modification of, when

1. [T]he court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

Father, or the child's maternal grandmother would verbally threaten Father. Mother refused to cooperate even when Father summoned police officers to assist him in obtaining visitation pursuant to the court ordered joint custody plan. Dr. Sisk testified that he witnessed Qualesha's tearful reaction to Mother's angry outburst toward Father at a counseling session.

■ Although Mother disputed allegations of her misconduct, the trial court credited Father's version of events. Even if the evidence could support a different conclusion, we defer to trial court's findings because it is in the best position to weigh the evidence, evaluate the credibility of the testimony presented and assess other intangibles not revealed in the transcript. *Ellis v. Ellis,* 970 S.W.2d 416, 418 (Mo.App. W.D.1998). Points I and II are denied because there was substantial evidence of a change in circumstances warranting a custody modification to serve the child's best interests.

## Point III

■ In her third point on appeal, Mother asserts the trial court erred in allowing Dr. Sisk to testify about an incident that occurred during his third counseling session with the parties and Qualesha. Mother's counsel objected to Dr. Sisk's testimony at trial, stating she had no notice that the psychologist would serve as an expert witness. Father's counsel responded that Dr. Sisk was being called solely as a fact witness about an event that occurred in his office. The court overruled the objection and allowed Dr. Sisk to give an eyewitness account of Mother's loud and angry comments about Father in Qualesha's presence during a counseling session. Dr. Sisk also testified that Qualesha was "visibly upset" and became "tearful" after the incident.

The record indicates the trial court admitted Dr. Sisk's testimony as a fact witness and not as an expert. Notwithstanding this distinction, Mother argues on appeal that the court treated Dr. Sisk as an expert by relying on his testimony to conclude that Qualesha was emotionally harmed by Mother's misconduct. Mother suggests there was no other evidence to support this finding and that no such finding could be made without a qualified expert opinion that the child was emotionally distressed.

■ Missouri courts have recognized that a fact finder may draw conclusions about a person's mental or emotional condition based on evidence of the person's actions and behaviors. *Scott v. Scott,* 612 S.W.2d 61, 63 (Mo.App. W.D.1981); *Reller v. Hamline,* 895 S.W.2d 659, 662 (Mo.App. W.D.1995). Such evidence may come from lay witnesses describing the conduct of the affected person. *Reller,* 895 S.W.2d at 662. Thus, the trial court could properly consider Dr. Sisk's observations of Qualesha's tearful reaction to her Mother's angry outburst at the counseling session.

■ In addition to Dr. Sisk's observations, there was other evidence from which the court could reasonably conclude the child was emotionally harmed by Mother's conduct. Father testified that Mother's comments and actions caused the child to fear visiting with him. On one occasion, Father drove to pick-up Qualesha for visitation. Qualesha got into the car and immediately warned Father not to touch her private parts. Later that same day, Qualesha said that her Mother had mentioned several things Father was not allowed to do, including giving the child a bath. Father also testified that Mother frequently cursed and berated the child when he returned her after visitation.

The lay testimony of Dr. Sisk and Father sufficiently supported the court's

finding that Qualesha suffered emotional harm as a result of Mother's misconduct. Expert testimony was not required, as a determination of the child's emotional condition could be made based on her statements and conduct. Thus, the court did not err in admitting and considering Dr. Sisk's testimony as a fact witness.

Point III is denied, and the trial court's judgment is affirmed.

All concur.